Hillsborough
No. 91-041

# The State of New Hampshire

### v.

# Robert David Dedrick

May 1, 1992

*John P. Arnold,* attorney general (*Tina L. Nadeau* and *Mark E. Howard,* assistant attorneys general, on the brief, and *Geoffrey S. Ransom,* attorney, orally) for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Robert David Dedrick, was convicted of second degree murder by the Superior Court (*Murphy,* J.) and sentenced to 15–30 years in prison. The defendant appeals, asking that his conviction be reversed on the grounds that the trial court improperly failed to instruct the jury on the significance of his post-homicide actions. Alternatively, the defendant requests that we remand the case to the trial court for an *in camera* review of notes the prosecution made during an interview of a defense witness. We affirm in part, reverse in part, and remand.

On May 31, 1987, the Manchester Police Department discovered the body of Luis Ramirez in his apartment. Ramirez had died from multiple stab wounds. The police were informed that the defendant

had been seen with Ramirez the afternoon before Ramirez' body was discovered, and brought the defendant in for questioning. While in police custody, the defendant confessed to the murder and claimed that he was acting in self-defense. This case has been before us previously, *State v. Dedrick*, 132 N.H. 218, 564 A.2d 423 (1989), *cert. denied*, 494 U.S. 1007, 1008 (1990), in which we set out the facts of the murder in more detail.

At trial, the defendant admitted that he owed Ramirez $640 for a cocaine debt. He admitted that he killed Ramirez by stabbing him to death, but testified that he acted in self-defense after Ramirez had attacked him with a knife. He also testified that after Ramirez was slumped against the wall, incapacitated, he took money and cocaine from Ramirez' person and apartment, washed blood from his own body, and disposed of the weapon he had used to fatally wound Ramirez.

I. *Jury Instructions*

After closing arguments, the trial court instructed the jury on the crimes of first and second degree murder and the defense of self-defense involving deadly force. Neither party objected to those instructions. On the fourth day of deliberations, the jury asked the court whether a person has the responsibility to leave the scene of the attack the moment the other person is disabled. The court expressed its confusion at the jury's question, and the jury rephrased its question as follows:

> "Can the claim of self defense be negated if the defendant does not leave/retreat the apartment, even if the threat is over when the assailant is incapacitated."

Because the question, as written, was ambiguous, the parties disagreed about the answer to be given. The defense argued that the jury was concerned with the significance to be attached to Dedrick's actions of theft and concealment after the alleged struggle was over but before Dedrick left the apartment, and argued that the answer to the jury's question should be "no," because there was no duty to leave once the alleged struggle had concluded. The prosecution maintained that the question went to the issue of excessive force and the duty to retreat before using deadly force.

The court answered the question in the following manner:

> "You must rely on the instructions given previously relative to self-defense, reasonable force and duty to retreat."

On appeal, the defendant argues that the court erred by failing to specifically inform the jury that "the duty to retreat terminated once

the struggle had been concluded and the subsequent acts could not, as a matter of law, automatically nullify the defense of self-defense." We disagree.

■■ A claim that the trial court erroneously instructed or refused to instruct the jury, or refused to answer a jury question in language requested by the defendant, must be evaluated in the context of the entire charge and all of the evidence. *State v. Prisby*, 131 N.H. 57, 59, 550 A.2d 89, 90 (1988). We consider the instructions in their entirety to determine whether the trial court adequately stated the relevant law. *State v. St. John*, 129 N.H. 1, 3, 523 A.2d 26, 28 (1986). A court is under no obligation to use specific language requested by a defendant. *Id.* The trial court has discretion to determine whether or not a particular instruction is necessary to assist the jury in reaching a verdict. *Id.* We will not reverse the conviction unless the instructions did not fairly cover the issues of law in the case. *State v. Saucier*, 128 N.H. 291, 299, 512 A.2d 1120, 1126 (1986).

■■ When a jury's question is susceptible of several interpretations, the court may engage in further dialogue to ascertain its specific meaning, as did the court in *Prisby*. It is equally proper, however, to refer the jury to the complete and adequate instructions previously given. The defendant argues that "if the jury was not expressly told the post-event facts did not negate self-defense as a matter of law, then the jury was free to speculate regarding the significance of the defendant's actions." The jury could properly draw inferences from the defendant's conduct throughout the affair. *See State v. Sadvari*, 123 N.H. 410, 413, 462 A.2d 102, 104 (1983) (subsequent acts and statements may be considered by jury). The significance to be accorded the defendant's post-offense actions was properly within the province of the jury. The court had instructed broadly on the issue of self-defense, and, in particular, on the duty to retreat and the use of excessive force. The court charged the jury that "a person does not have the right to use deadly force on another person to defend himself if; number one, the defendant knew that he could retreat from the encounter; and number two, that the defendant knew that he could do so in complete safety." This is a correct and adequate statement of the law regarding the duty to retreat. At no point did the court imply that the defendant had a duty to retreat after the victim was incapacitated. Therefore, there was no need to specifically address that issue, and the court properly referred the jury back to the previous correct instructions.

II. *In Camera Review*

Six days before trial, the court heard the defendant's motion for production of exculpatory material that the State may have obtained during interviews with various witnesses. Specifically, the defendant requested disclosure of the prosecutor's notes of any witness preparation which contained "information that has come to [the prosecution's] attention that is potentially exculpatory to any degree whatsoever." The defendant stated that "the court can redact [the State's] work-product" before turning over the material. The State concedes that the defendant's request was, in effect, a request for an *in camera* review of all of the prosecution's interview notes.

The trial court ruled that the prosecutor's notes were protected by the work-product privilege, but ordered the prosecution "to divulge to the defendant any information received from those witnesses relative to or that might lead to exculpatory evidence," consistent with the State's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963).

At trial, the defense produced a witness, James O'Leary, who testified that Ramirez had attempted to hire him to collect the drug debt from the defendant, and that Ramirez had threatened to kill the defendant if he saw him again. On cross-examination, the prosecutor attempted to impeach O'Leary's credibility by referring to an interview the prosecutor had conducted one week before trial, at the Cambridge, Massachusetts jail.

During cross-examination, the State and O'Leary engaged in the following exchange:

"State: When you and I met down at the Cambridge Jail last Saturday, you never said anything to me about Luis Ramirez talking about killing David Dedrick, did you?

O'Leary: Yes, I did.

State: That's your best recollection?

O'Leary: My best recollection is I did. I stated that the only thing that was not in the report was the fact that Ramirez said that he wanted to kill Dedrick."

The very nature of the prosecutor's questions made the prosecutor, in effect, a witness in the trial. The jury was placed in the position of weighing the credibility of the witness, O'Leary, against that of the prosecutor on the critical question of whether Ramirez had earlier indicated an intent to kill the defendant. *See Douglas v. Alabama*,

380 U.S. 415, 419 (1964) (although prosecutor's reading of witness's alleged statement not technically testimony, it may have been equivalent of testimony in jury's mind, and created situation in which jury might improperly infer both that statement had been made and that it was true).

Immediately after the prosecution's cross-examination of O'Leary, the defendant requested "production of the notes of [the prosecutor's] interview, as well as the notes of any other third or fourth parties that may have been present during the interview, all reports generated from such notes and all materials relating to that interview whatsoever." The defense did not specifically request an *in camera* review at that stage. The State objected generally, arguing that police reports already provided to the defense contained most of the information that was the subject of cross-examination, and that the prosecutor's personal notes prepared in anticipation of cross-examination were not discoverable. The court denied the defendant's request.

██ There is no doubt that the prosecution has a duty to disclose evidence favorable to the accused where the "evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. at 87. The trial court properly ordered the State to produce any exculpatory material it had in its files, and, in the absence of a showing by the defendant that the State failed to do so, we presume that the State complied with the court's order. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (where defendant makes only general request for exculpatory material, State decides which information must be disclosed, and unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to court's attention, prosecutor's decision on disclosure is final). The defendant did not meet his burden of showing that the prosecutor withheld exculpatory information prior to trial. Therefore, the trial court did not abuse its discretion in refusing to conduct an *in camera* review of the prosecution's notes prior to trial. *State v. Lewis*, 129 N.H. 787, 799, 533 A.2d 358, 366 (1987) (discovery generally subject to trial court's discretion); *see also United States v. Valera*, 845 F.2d 923, 927 (11th Cir. 1988), *cert. denied*, 490 U.S. 1046 (1989) (trial judge not required to personally search government files for exculpatory evidence; decision on how to enforce disclosure requirements a matter of discretion for trial court).

██ However, once the prosecution referred to the prior interview with O'Leary during cross-examination, the prosecution waived

the work-product privilege with respect to the interview notes, *United States v. Nobles*, 422 U.S. 225, 239–40 (1975), and opened the door to the defendant's discovery and use of the notes. Because the interview notes cease to be protected by the work-product privilege once the prosecution refers to them, the defendant has a right to inspect them if they are material and relevant evidence. Clearly, the notes are both relevant and material to the issue of O'Leary's credibility.

In *State v. Arthur*, 118 N.H. 561, 391 A.2d 884 (1978), we set forth the factors to be considered when a *Brady* violation is *alleged*: "'(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and, (c) the materiality of the evidence.'" *Id.* at 563, 391 A.2d at 885–86 (quoting *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972)).

As to the second factor, neither we nor the trial court can possibly know whether the notes were favorable to the defendant without inspecting them. Before inspecting the prosecutor's notes, the defendant cannot possibly know whether O'Leary did or did not make the statement about Ramirez' threat to the prosecutor. The prosecutor created a dispute of material fact when he challenged O'Leary's testimony, and in so doing he converted his work product into evidence directly relevant to the credibility of a key defense witness.

The State argues in its brief, unconvincingly, that:

> "Since the defendant failed to provide a basis for his claim that exculpatory material existed in the notes, his appeal must fail. The trial court properly exercised its discretion in denying the defendant's motion for discovery of the prosecutor's notes."

This argument would place upon the defendant the impossible burden of providing the trial court with a basis to claim that there was exculpatory material contained in the prosecution's notes, while at the same time denying the defendant the only means to provide such a basis, namely an opportunity to inspect the notes. This cannot be permitted.

 The defendant need not show that a witness's statement he seeks to discover is exculpatory. He must show only that it reasonably may affect the witness's credibility. "'[W]hen the reliability of a given witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility falls within [the *Brady*] rule.'" *Com. v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quotation omitted)).

Clearly, O'Leary's prior statement to the prosecutor on a matter about which he testified at trial affects his credibility, whether or not the prosecutor's notes reflect the disputed statement. Moreover, O'Leary's sworn testimony that he did tell the prosecutor of the victim's threat during the prior interview is sufficient basis to support the defendant's contention that the notes contain exculpatory evidence.

■■■ Accordingly, we hold that the trial court abused its discretion by failing either to require disclosure of, or to inspect the prosecutor's notes from his interview with witness O'Leary, *after* O'Leary had testified, and *after* the prosecution had attempted to impeach O'Leary on the basis of a prior inconsistent statement. *See* N.H. R. Ev. 613(a).

■■■ The trial court's error was not harmless unless we can say beyond a reasonable doubt that the verdict was not affected by it. *State v. Sampson*, 132 N.H. 343, 348, 565 A.2d 1040, 1043 (1989). In this case, we cannot say beyond a reasonable doubt that the jury's verdict was not affected by the prosecution's failure to disclose the interview notes.

O'Leary's credibility was crucial to the defendant's case. O'Leary's testimony was the only evidence presented by the defendant tending to show that the victim intended to kill the defendant. That evidence was crucial to the defendant's allegation of self-defense, since it made the defendant's testimony that the victim attacked him more plausible. Therefore, we find that production of the prosecution's notes from the O'Leary interview was necessary in order either to rehabilitate the defendant's credibility in the eyes of the jury, or to corroborate the prosecutor's version of the interview. To leave the matter unresolved when a written record of the interview existed was error.

We remand this case to the trial court for an inspection of the prosecutor's notes of his interview of O'Leary, and a determination of whether Dedrick was prejudiced by the prosecutor's failure to disclose the interview notes after the defendant requested them at trial. The trial court should determine whether there is a reasonable probability that the result of the proceeding would have been different had the notes been disclosed to the defense. *State v. Dery*, 134 N.H. 370, 376, 594 A.2d 149, 153 (1991). If the court determines that there is such a probability, an opportunity for a new trial shall be granted. If the court finds that there is no reasonable probability

510

that disclosure of the notes would have changed the verdict, the verdict shall stand.

*Affirmed in part; reversed in part; remanded.*

THAYER, J., concurred in the result only; the others concurred.