Strafford
No. 93-373

THE STATE OF NEW HAMPSHIRE

v.

SHAWN MCLELLAN

November 7, 1994

134

*Jeffrey R. Howard,* attorney general (*Jeffrey S. Cahill,* attorney, on the brief and orally), for the State.

*Stephen A. White,* of Dover, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Shawn McLellan, appeals his conviction for aggravated felonious sexual assault pursuant to RSA 632-A:2 (Supp. 1993). The defendant argues that the Superior Court (*Dickson,* J.) erred in choosing as alternates two jurors who thought they knew people affiliated with the defendant, and in denying the defendant's motion for a mistrial based on a claimed violation of his right against self-incrimination. The defendant also appeals the court's responses to two jury questions. We affirm.

The defendant was indicted for aggravated felonious sexual assault for "knowingly engag[ing] in sexual penetration with another person by overcoming the victim through the actual application of physical force or superior physical strength; in that Shawn McLellan forced his penis into the mouth of [the victim] by forcing himself on top of her and pinning her down on a car seat." The alleged incident occurred on the evening of July 11, 1992, when the defendant offered a ride to the victim who was hitchhiking.

At trial the defendant testified that when initially questioned by the police at the hospital while his blood and saliva samples were taken, he told them that he did not pick up a hitchhiker. He admitted to having signed a *Miranda* form which he understood waived his right to remain silent. He also testified that he did not inform his wife of the alleged incident until after he was released from the hospital. Over the defendant's objection, the State asked him on cross-examination if he contacted the police to correct his statements after having told his wife what had occurred that evening, to which the defendant answered in the negative.

During the trial, two jurors questioned the court about people whom they had noticed in the courthouse. Juror number ten advised the court that she had noticed a woman sitting in the back of the courtroom whom she had met in a parent conference at the school where she is a guidance counselor. The juror felt that she could still render an unbiased opinion. The woman turned out to be the defendant's mother, although no mention of this fact was made to the juror. The court ruled that this juror would continue to sit and deliberate on the jury if needed, but would automatically become an alternate if she were not needed. The defense objected.

Juror number five also spoke with the court, indicating that during the lunch break, he had seen the defendant speaking to a

woman in the hallway whom he thought might be the defendant's mother. The juror recognized the woman as a clerk at a convenience store. It was determined that the defendant did not know the woman and had been briefly speaking with her about another trial. Over the defendant's objection that the State would in effect be given two peremptory challenges if both jurors five and ten were made alternates, the court ruled that juror number five would also be an alternate unless he was necessary to make up the twelve required jurors.

After the first day of deliberations, the jury asked the court the following question: "Does there have to be a connection/correlation between the actual penetration and the use of force?" During a chambers conference, the defendant argued that the answer was clearly "yes." The court decided to ask the jury to clarify the question, after which the jury returned with: "If they agreed to oral sex and he then withdrew; she then disagreed to any additional activity, he then continued. Does force still apply?" The court issued a written answer which included a statement that "with respect to this charge, the defense of consent has not been raised," to which the defendant objected. The defendant was convicted of aggravated felonious sexual assault.

■ On appeal the defendant first argues that the court erred in ruling that juror number ten would be an alternate unless she was needed to make up the panel of twelve jurors. Since the defendant's argument with respect to juror number five is identical, we will address both issues simultaneously. The defendant argues that his fundamental right to a fair jury trial under both part I, article 15 of the New Hampshire Constitution and the sixth amendment to the United States Constitution has been violated because the court's ruling in effect gave the State two additional peremptory challenges to jurors. "However, the constitutional dimension of the defendant's argument was not called to the trial court's attention, nor was it raised in the notice of appeal. Therefore, we will consider his argument under an abuse of discretion standard . . . ." *State v. Plante,* 134 N.H. 456, 459, 594 A.2d 1279, 1282 (1991).

We note that RSA 500-A:13, I (1983) requires that alternate jurors "at the direction of the presiding justice, be drawn, selected and empaneled in the same manner as the regular jurors." RSA 500-A:13, II(a) provides that "[t]he alternate jurors shall . . . [b]e sworn with and seated near the jury . . . ." In the case at hand, the trial court empaneled fourteen jurors, postponing the designation of the alternates until the case was submitted to the jury for deliberations. We need not decide whether this procedure violated

RSA 500-A:13 because this issue has not been presented for appeal. *See State v. Jaroma,* 137 N.H. 562, 569, 630 A.2d 1173, 1177 (1993).

■ We now address whether the trial court abused its discretion by hand-picking jurors five and ten to be alternates instead of randomly selecting two. In the chambers conference regarding these jurors, the State voiced the concern that since both jurors had a chance of future contact with the individuals whom they recognized and speculated may be related to the defendant, these jurors might be unable to deliberate impartially. The defendant objected to making these jurors the alternates. An analogy can be drawn to *State v. Jaroma,* where the trial court nonrandomly selected a foreperson. *See Jaroma,* 137 N.H. at 569, 630 A.2d at 1177. We found in *Jaroma* that since the entire panel, including the foreperson, consisted of impartial jurors, the defendant had failed to demonstrate "that he was prejudiced by the selection." *Id.* at 570, 630 A.2d at 1177. The defendant in the case at hand has failed to demonstrate that the nonrandom selection of jurors five and ten as alternates deprived him of an impartial jury. The trial court had evidence of possible connections, both past and future, between jurors five and ten and people whom those jurors believed were associated with the defendant. On the facts of this case, viewed in the context of the questions presented to us, we conclude that it was within the trial court's discretion to choose jurors five and ten to be the alternates after considering their potential associations, however remote, with the defendant, so as to provide both sides as impartial a jury as possible.

■ The defendant next argues that the trial court erred in overruling his objection to the State's question to the defendant on cross-examination: "After you went home from the hospital and you told your wife did you then contact the police to tell them, 'By the way, I lied to you. Let me tell you the truth.'?" The defendant's response was that he had not. The defendant raises the right against self-incrimination as guaranteed by part I, article 15 of the New Hampshire Constitution and the fifth amendment of the United States Constitution. We base our decision on the New Hampshire Constitution, *see State v. Ball,* 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and cite federal law only to aid our analysis, *see State v. Maya,* 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). We need not engage in a separate federal analysis because the Federal Constitution does not afford the defendant any additional

protections. *Cf. State v. Torres,* 130 N.H. 340, 540 A.2d 1217 (1988); *Miranda v. Arizona,* 384 U.S. 436, 444–45 (1966).

The defendant's reliance upon his right to remain silent is faulty. When a suspect asserts the right to remain silent after being given *Miranda* warnings, "all questioning must cease." *State v. Munson,* 126 N.H. 191, 193, 489 A.2d 646, 647 (1985) (quotation omitted). Subsequently, the suspect's exercise of this right "may not be used against him at trial." *Id.; see Doyle v. Ohio,* 426 U.S. 610 (1976). In this case, however, the defendant waived his *Miranda* rights when he voluntarily responded to the officer's questioning about whether he picked up a hitchhiker, repeatedly denying that he encountered the victim. The defendant's inconsistent testimony at trial that he did pick up the victim while she was hitchhiking, and that he lied to the police so that his wife would find out about the incident from him first, compelled the State to cross-examine the defendant about why he never retracted his lie to the police. By offering testimony at trial that differed from the defendant's post-*Miranda* statements, the defendant placed his credibility in issue, thus permitting the prosecution to "probe all post-arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details." *United States v. Ochoa-Sanchez,* 676 F.2d 1283, 1286 (9th Cir.), *cert. denied,* 459 U.S. 911 (1982); *see Anderson v. Charles,* 447 U.S. 404 (1980) (*per curiam*).

The defendant next argues that the court erred when it did not answer "yes" to the jury's first question as to whether there had to be a "connection/correlation between the actual penetration and the use of force." We evaluate a claim that the trial court refused to answer a jury question in language requested by the defendant "in the context of the entire charge and all of the evidence." *State v. Dedrick,* 135 N.H. 502, 505, 607 A.2d 127, 129 (1992). The trial court instructed the jury that the State had to prove: (1) that the defendant had sexually penetrated the victim; (2) that the defendant overcame the victim by actually using physical force or superior physical strength; and (3) that the defendant acted knowingly. The State accurately points out that the jury's question, which used the terms "connection/correlation," can plausibly be interpreted to ask either of the following about the charge: whether a causal relationship between the sexual penetration and the use of force is required, or whether a temporal correlation between the essential elements is all that the State must prove. Where the jury's question is susceptible to several interpretations, we have held that "the court may engage in

further dialogue to ascertain its specific meaning." *Id.* The court has discretion to determine how it can best assist the jury in its deliberations, and is not obligated to answer the jury with the specific language requested by the defendant. *Id.* By asking the jury to rephrase its question, the court engaged in a neutral measure for the benefit of both parties. We therefore hold that the. trial court acted properly.

Finally, the defendant argues that the trial court erred when it included in its response to the jury's second question the guidance that the defense of consent had not been raised to the charged conduct. The jury indicated that the testimony of the defendant and the victim created confusion as to whether the application of force by the defendant in sexual activity subsequent to the alleged penetration fell within the crime charged. Therefore, the court provided the jury with the elements of the charged offense, stating that "the defense of consent has not been raised." The court also gave the jury a copy of the indictment as requested by the defendant.

■ We have held that the jury charge is primarily meant "to clarify the issues of the case, and to assist the jury in understanding the questions to be resolved." *State v. St. John,* 129 N.H. 1, 3, 523 A.2d 26, 27–28 (1986) (quotation omitted). The trial court properly included a statement regarding the defense of consent because the court has discretion to decide "[w]hether or not a jury instruction on a particular issue is necessary to assist the jury in reaching its verdict." *Id.* at 3, 523 A.2d at 28. We will not reverse the trial court's decision on the basis of jury instructions unless they did not "fairly cover the issues of law in the case." *Dedrick,* 135 N.H. at 505, 607 A.2d at 129. The defendant contends that the court's reinstruction stating that the defendant had not argued consent was prejudicial because it was inconsistent with his contention that the charged oral penetration never occurred. We view the trial court's reinstruction as properly informing the jury what constituted the element of physical force and whether there were legal defenses to the charge that it had to consider.

*Affirmed.*

All concurred.