Merrimack
No. 93-487

THE STATE OF NEW HAMPSHIRE

v.

GLENDON P. DREWRY, JR.

June 30, 1995

*Jeffrey R. Howard,* attorney general (*Mary P. Castelli,* assistant attorney general, on the brief and orally), for the State.

*Shaheen, Cappiello, Stein & Gordon,* of Concord (*Robert A. Stein* and *Michael J. Sheehan* on the brief, and *Mr. Stein* orally), for the defendant.

*Cathy J. Green,* of Manchester, by brief for the New Hampshire Association of Criminal Defense Lawyers, as *amicus curiae.*

*McSwiney, Semple, Bowers & Wise,* of Concord (*Steven G. Brown* on the brief), for the New Hampshire League of Investigators, Inc., as *amicus curiae.*

BROCK, C.J. The defendant, Glendon P. Drewry, Jr., is charged with multiple counts of negligent homicide arising from a car accident that resulted in the deaths of two people. In this interlocutory

transfer, the defendant contends that the Superior Court (*McHugh*, J.) order that he disclose information regarding certain witnesses violates the work product doctrine and his rights to effective assistance of counsel and against self-incrimination under the State and Federal Constitutions. We affirm.

Based on a discovery request by the defendant, the State was ordered to provide the defendant with its entire investigative file. The State moved for reciprocal discovery pursuant to Superior Court Rule 99 seeking: (1) "[a] list of potential defense witnesses, with their respective addresses"; (2) "[s]tatements of the above witnesses, and/or reports of interviews with these witnesses"; and (3) "[a] list of any expert witnesses, along with their qualifications; reports or results of any physical, mental examinations, and results of any scientific experiments, tests or comparisons made by these witnesses." At the hearing on the State's motion for discovery, the State limited its request to individuals the defendant intended to call at trial.

The superior court ordered the defendant to provide the State with

> a list of actual trial witnesses and their addresses, both lay witnesses and expert witnesses; with respect to lay witnesses, copies of any written statements signed by those witnesses that pertain solely to the witness's testimonial content; or statements taken by the defense not signed by the witness but containing the written recollection of the events of which he or she will testify; and with respect to expert witnesses, a report of their theories and opinions and the basis for them.

The court ordered the lay witness information to be given to the State fourteen days before trial and the expert information produced at least thirty days before trial. The court allowed an interlocutory transfer of its ruling.

## I. Work Product Doctrine

The defendant argues that evidence is protected by the work product doctrine if it was prepared in anticipation of litigation by an attorney or at an attorney's direction and if it contains information acquired during preparation of the case for trial. He contends that each category of information the trial court ordered to be released to the State falls within the doctrine's protection. The defendant also argues that the evidence is protected by the work product doctrine because the State has failed to show "substantial need" for the materials or the inability "without undue hardship to obtain the substantial equivalent of the materials by other means," citing Superior Court Rule 35(b)(2). These arguments fail for the same reasons we today articulate in *State v. Chagnon*, 139 N.H. ____, 662

A.2d 944 (1995). The defendant asserts that three types of evidence ordered to be disclosed are protected by the work product doctrine. We address only arguments that differ from those discussed in *Chagnon*.

■ The trial court's order requires the defendant to produce a list of actual trial witnesses and their statements. The defendant argues that a witness list is work product because it expresses the defendant's theory and defenses. The trial court noted, however, that "[t]he disclosure of the trial witnesses' names and addresses is so fundamentally fair that defense counsel can offer no sound objections to it." Indeed, it was conceded at oral argument that it is the general practice in this State that the parties voluntarily turn over witness lists. *Cf. Barry v. Horne,* 117 N.H. 693, 695, 377 A.2d 623, 625 (1977) (affirming order requiring pretrial disclosure of trial witness names in civil case). Although this concession does not serve to waive the issue, it does illustrate how minimal any intrusion into trial preparation such a disclosure would be. The trial court's decision to order the disclosure of the names of persons expected to testify at trial may or may not violate the work product doctrine. *See Chagnon,* 139 N.H. at ____, 622 A.2d at 944. Regardless, the overriding necessity of the exchange of witness lists for the fair and efficient conduct of trials requires us to hold that witness lists are an exception to the work product doctrine and that they therefore must be disclosed upon request or order.

■ The defendant next argues that the order violates the work product doctrine by requiring the defendant to produce copies of any written statements signed by those witnesses and statements taken by the defense not signed by the witness but containing the written recollection of the events of which he or she will testify. The defendant argues that reports of interviews fall within the work product privilege pursuant to *State v. Dedrick,* 135 N.H. 502, 607 A.2d 127 (1992). In *Dedrick,* this court assumed that an attorney's handwritten "personal notes" were work product. *Id.* at 507–08, 607 A.2d at 130–31. The issue in that case, however, was waiver of the work product privilege, not the scope of the privilege, and therefore it offers little support for the defendant's position. In this case, the order requires production of only those parts of the reports of interviews that contain the substance of the witness's statement; "[a]nything in those reports that is in addition to the actual account of the incident by the witness such as the witness's appearance and demeanor when giving the statement or how defense counsel plans to introduce this evidence as part of his or her theory of defense can be excised prior to the statement being disclosed to the State." Under such an order, upon receiving a statement or report that is partially redacted, the party receiving the document has the right to ask the court to review the

unredacted version *in camera* to verify that the omitted portions are protected by the work product doctrine. *See Chagnon,* 139 N.H. at ____, 662 A.2d at 949.

Finally, the court's order requires production of expert reports of those expert witnesses the defendant intends to call at trial. The order states that "[i]n the case of expert witnesses, reports of their analys[e]s and conclusions will satisfy the disclosure requirement." The defendant argues that such disclosure would include work product because the defense "directed [the] expert to perform certain services with an eye toward trial."

This court has stated, in the civil context, that "[r]eports obtained by a lawyer from his experts are almost always considered to be part of his work product." *Willett v. General Elec. Co.,* 113 N.H. 358, 359, 306 A.2d 789, 790 (1973). We reasoned that

> [r]eports from experts present peculiar problems. In the first place they are more likely than ordinary statements to reflect questions and lines of inquiry suggested by the lawyer. Moreover, the expert witness's very relationship to the case usually stems from the choice of the party and his attorney who hire such a witness to become associated with them in examining certain aspects of the case and advising what positions the party should take with regard to them. There seems to be fairly good reason, therefore, for treating these reports as part of the work product of the lawyer in most cases.

*Id.* at 359–60, 306 A.2d at 790 (quotation omitted).

■ Superior Court Rule 99, however, gives the trial court the authority in a criminal case to require the parties "to exchange . . . statements of witnesses; any reports or results, or statements or conclusions relative thereto, of physical or mental examinations; or of scientific tests, experiments or comparisons; or any other reports or statements of experts." This portion of Rule 99 must be interpreted in a way so as to protect work product. Factual information in an expert's report is not privileged. A report that merely analyzes facts and renders an opinion as to what occurred without reflecting or discussing the theories, mental impressions, or litigation plans of the defense attorneys should not be considered work product. *See* 23 AM. JUR. 2D *Depositions & Discovery* § 68 (1983 & Supp. 1995). Accordingly, we conclude that no part of the trial court's order violates the work product doctrine.

## II. *Right Against Self-Incrimination*

The defendant next argues that the trial court's order violates his State and federal constitutional privileges against compelled

self-incrimination. The New Hampshire Constitution provides that "[n]o subject shall . . . be compelled to accuse or furnish evidence against himself." N.H. CONST. pt. I, art. 15. The fifth amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The State constitutional privilege against self-incrimination is comparable in scope to the fifth amendment. *State v. Cormier*, 127 N.H. 253, 255, 499 A.2d 986, 988 (1985). We address the defendant's claim under the State Constitution first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and cite federal law only as an aid to our analysis. *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because federal law is not more favorable to the defendant, we need not address his federal claim in this case. *See id.*; *State v. LaFountain*, 138 N.H. 225, 227, 636 A.2d 1028, 1029 (1994).

▮▮ The defendant contends that the order violates his privilege against self-incrimination because it compels the production of information that will unconstitutionally lighten the prosecutor's burden of proving his guilt beyond a reasonable doubt. In making this argument, the defendant relies almost exclusively on *In re Misener*, 698 P.2d 637 (Cal. 1985). In *Misener*, the California Supreme Court rejected a statute that permitted "the prosecution in a criminal case to discover from the defendant or his counsel, following testimony on direct examination of defense witnesses other than the defendant, prior statements made by those witnesses." *Id.* at 638. The court concluded that the statute was unconstitutional "because it violate[d] that aspect of the defendant's privilege against self-incrimination requiring the prosecution to carry the entire burden of proving the defendant's guilt." *Id.* After extensively reviewing the development of criminal discovery in California, the court rejected federal law to the contrary and based its decision solely on the California Constitution. The court reasoned:

> By requiring the defendant to hand over evidence that will impeach his witnesses, [the statute] undeniably lightens the prosecution's burden. To the extent the prosecution gains information tending to negate a defense it is *not* investigating its own case, proving its own facts, or convincing the jury through its own resources. . . . [T]he privilege forbids compelled disclosures which could serve as a link in a chain of evidence *tending* to *establish guilt of a criminal offense*; in ruling upon a claim of privilege, the trial court must find it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question *cannot possibly have a tendency to incriminate the witness*. The constitutional protection

> does not end with the establishment of a prima facie case; it extends to the establishment of *guilt,* including absence of defense, excuse, or justification. There is no doubt that the evisceration of a defense "incriminates" the defendant.

*Id.* at 646 (quotations and citations omitted); *see Scott v. State,* 519 P.2d 774, 775 (Alaska 1974) (decided under Alaska Constitution).

The holding in *Misener* was subsequently abrogated by an amendment to the California Constitution that provides for reciprocal discovery in criminal cases. *See* CAL. CONST. art. I, sec. 30(c). The California Supreme Court has since upheld the amendment against challenges that the amendment violates state and federal constitutional rights against self-incrimination. *See Izazaga v. Superior Court,* 815 P.2d 304, 309–14 (Cal. 1991).

The United States Supreme Court has held that "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." *United States v. Nobles,* 422 U.S. 225, 234 (1975). The Court reasoned that

> the Fifth Amendment privilege against compulsory self-incrimination is an intimate and personal one, which protects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation. . . . [T]he privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him.

*Id.* at 233 (quotations and citations omitted). The Court observed that "[t]he fact that . . . statements of third parties were elicited by a defense investigator on respondent's behalf does not convert them into respondent's personal communications. Requiring their production from the investigator therefore would not in any sense compel respondent to be a witness against himself or extort communications from him." *Id.* at 234; *see State v. Yates,* 765 P.2d 291, 295 (Wash. 1988) (trial court's disclosure order does not violate defendant's right against compulsory self-incrimination because statements not made by the defendant). We too have noted the personal nature of the privilege. *See State v. Cote,* 95 N.H. 108, 111, 58 A.2d 749, 752 (1948) ("privilege against self-incrimination under [pt. I, art. 15] is strictly a personal one applicable to an individual holding his private records in a purely personal capacity").

In *Williams v. Florida,* 399 U.S. 78 (1970), the Supreme Court upheld the constitutionality of an alibi statute that required a defendant to disclose prior to trial that he intends to rely on an alibi as a defense and to list the names of witnesses he intends to call at trial to prove the alibi. The Court reasoned that this did not require the defendant to say or

testify to anything he would not otherwise say or testify to; it merely determined the time at which he would have to assert the matter:

> At most, the [notice-of-alibi] rule only compelled petitioner to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the petitioner from the beginning planned to divulge at trial. Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself.

*Id.* at 85; *see* SUPER. CT. R. 100.

The rationale of *Williams* has been held to apply equally to pretrial disclosure of more general information. In rejecting the defendant's argument that he was incriminating himself by providing pretrial a list of witnesses and their statements, the Indiana Supreme Court stated that "what was said in *Williams* with respect to alibi-witnesses is applicable to witnesses in general." *State ex rel. Keller v. Criminal Ct. of Marion Cty.,* 317 N.E.2d 433, 438 (Ind. 1974).

> The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. *That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.*

*Id.* at 438 (quotation omitted); *accord State v. Kills on Top,* 787 P.2d 336, 344 (Mont. 1990); *Hobbs v. San Diego Mun. Court (People),* 284 Cal. Rptr. 655, 664–65 (Ct. App. 1991); *State v. Nelson,* 545 P.2d 36, 39 (Wash. App. 1975). As observed by the authors of a study recommending "full and open discovery" in New Hampshire courts at the time Superior Court Rule 99 was enacted, pretrial exchange of information "would not infringe upon Fifth Amendment rights of defendants since it would not force testimony; rather, it would not allow the defendant to retain tactical advantages of timing which would be denied the prosecution." NEW HAMPSHIRE COURT SYSTEM STANDARDS AND GOALS 230 (1977).

The defendant's argument that disclosure would lighten the State's burden of proof has likewise been rejected. We agree with the Indiana Supreme Court that

> pre-trial discovery to the extent required in the case before us does not eliminate the proof beyond a reasonable doubt standard nor does it shift the burden of proof. . . . Pre-trial discovery merely regulates the timing of disclosures. Absent pre-trial discovery, a defendant can spring a surprise defense and witnesses in support thereof. The State's only recourse is to seek a continuance in order to meet this defense. The discovery procedure simply says that if a defendant chooses to employ a certain defense . . . the State will not be surprised; the trial will not be delayed.

*Keller,* 317 N.E.2d at 437.

■ Because the trial court properly limited the scope of its order to those witnesses the defendant intended to call at trial, we hold that the trial court's order does not violate the defendant's State or federal right against self-incrimination.

## III. Ineffective Assistance of Counsel

The State and Federal Constitutions guarantee the right to effective assistance of counsel. *See* N.H. CONST. pt. 1, art. 15; U.S. CONST. amends. VI and XIV. The State Constitution provides at least as much protection as the Federal Constitution in this area. *See State v. Anaya,* 134 N.H. 346, 351, 592 A.2d 1142, 1145 (1991); *cf. Lockhart v. Fretwell,* 113 S. Ct. 838 (1993). We consider the defendant's claim under the State Constitution first, *see Ball,* 124 N.H. at 231, 471 A.2d at 350, and use federal law only as an aid in our analysis. *State v. Killam,* 137 N.H. 155, 157, 626 A.2d 401, 403 (1993).

■ The defendant contends that "[o]rder[s] requiring production of investigators' and counsel's interviews will decrease the quality of representation given criminal defendants in this state in violation of defendant's state and federal rights [to] effective assistance of counsel." The defendant argues that "[d]efense counsel, in fear of unwittingly helping prepare the State's case, will not dig as zealously a[s] the law requires, possibly missing the basis for a defense."

This argument has been rejected by other courts. The Supreme Court of Washington stated:

> We cannot conclude that the trial court's order [requiring defense counsel to produce for *in camera* review all alleged work product] would have a chilling effect on either trial preparation by defense counsel or on the attorney-client relationship such as to deny defendant his right to counsel. To the contrary, we would expect diligent counsel to continue to interrogate potential prosecution witnesses whenever reasonably possible. Experienced members of

the trial bar will and ordinarily should seek to ascertain what every witness will likely testify to at trial. Prudent practice, especially in a criminal case as serious as this one, calls for no less.

*Yates,* 765 P.2d at 295. The Supreme Judicial Court of Massachusetts noted that the policy behind the rules of criminal procedure in Massachusetts allowing for reciprocal discovery "is that the availability of statements of nonparty witnesses gathered by an adversary serves a truth-enhancing function that outweighs any resulting inconvenience or potential disincentive to lawyers who obtain and preserve such statements in written form." *Commonwealth v. Paszko,* 461 N.E.2d 222, 237 (Mass. 1984) (citation omitted). The *Paszko* court concluded that

[t]his public policy determination is consistent with the constitutional right to effective assistance of counsel. The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth. Documents similar to those the defendant argues should be unavailable to the prosecution were made available to defense counsel for impeachment purposes. The defendant is not constitutionally entitled to a discovery system that operates only to his benefit.

*Id.* (quotation omitted). Similarly, in *Izazaga,* the California Supreme Court stated that

a criminal defendant need disclose only those witnesses (and their statements) the defendant intends to call at trial. It is logical to assume that only those witnesses defense counsel deems helpful to the defense will appear on a defendant's witness list. The identity of damaging witnesses that the defense does not intend to call at trial need not be disclosed. Thus, there is nothing in [the discovery order] that would penalize exhaustive investigation or otherwise chill trial preparation of defense counsel such that criminal defendants would be denied the right to effective assistance of counsel under the Sixth Amendment.

*Izazaga,* 815 P.2d at 319.

The trial court's order in this case likewise limits discovery of statements to those witnesses the defendant intends to call at trial. Accordingly, we hold that the trial court's order does not deprive the

defendant of effective assistance of counsel under the State or Federal Constitutions.

We have considered the other arguments raised by the defendant in this transfer, and find them to be meritless. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed and remanded.*

All concurred.