Merrimack
No. 93-108

### THE STATE OF NEW HAMPSHIRE

### v.

### GARY CHAGNON

June 30, 1995

*Jeffrey R. Howard,* attorney general (*Mary P. Castelli,* assistant attorney general, on the brief and orally), for the State.

*Albert E. Scherr,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Gary Chagnon, was convicted of attempted murder. RSA 626:8 (1986); RSA 629:1 (1986); RSA 630:1-a (1986 & Supp. 1994). The defendant appeals, arguing that the Superior Court (*McHugh,* J.) violated the work product doctrine by ordering him to provide to the State the contents of an investigative file. We affirm.

Prior to trial the defendant sought extensive discovery from the State, including "[a]ny and all statements whether written, reported, recorded or otherwise transcribed or summarized, of all witnesses that may be called by the State . . . ." The State sought reciprocal discovery from the defendant including a request that the defendant provide prior to trial copies of all statements of any witnesses, either the State's or the defendant's, taken by the defendant's counsel, his private investigator or anyone acting on his behalf. The defendant refused to comply with the State's request. At the hearing on the State's motion for discovery, the State modified its request with respect to defense witnesses by requesting statements of only those witnesses who the defendant actually intended to call at trial.

The superior court ordered that "any statements [of witnesses] generated by the State or the defendant of a witness to be called to testify at trial shall be given to the opposing party 14 days prior to trial." In addition, the court ordered: "Neither party is required to reveal [its] theory of [the case] and, therefore, to the extent that any written statement contains such a [case theory], any language in that regard may be stricken."

In compliance with the order, the defendant supplied the State with a redacted copy of a statement of the victim taken by the defense investigator. The defendant argued that discovery of the redacted portions would disclose his theory of defense. The trial court

conducted an *in camera* review of the unredacted statement and found that the entire interview report contained only factual statements made by the witness. Specifically finding that the statement did not include any comments injected by the investigator, any theory of defense, or any statements of facts that the investigator learned from the defendant or some other source, the court granted the State's motion to compel.

The sole issue on appeal is whether the trial court's order violated the work product doctrine. In *Hickman v. Taylor,* 329 U.S. 495 (1947), the United States Supreme Court recognized the work product doctrine, establishing a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation. *See id.* at 510–14. The Court observed:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed . . . as the [w]ork product of the lawyer. Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–11 (quotation omitted). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975).

This court has defined work product "as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation. The lawyer's work must have formed an essential step in the procurement of the data which the opponent seeks, and he must have performed duties normally attended to by attorneys." *Riddle Spring Realty Co. v. State,* 107 N.H. 271, 274, 220 A.2d 751, 755 (1966). "The work product of a lawyer consists generally of his 'mental impressions, conclusions, opinions or legal theories.'" *Id.* at 275, 220 A.2d at 756 (quoting *Hickman,* 329 U.S. at 508). "It may consist of correspondence, memoranda, reports, . . . exhibits, trial briefs, drafts of proposed pleadings, plans for presentation of proof, statements, and other matters, obtained by him or at his direction in the preparation of a pending or reasonably anticipated case on behalf of a client." *Riddle Spring Realty Co.,* 107 N.H. at 275, 220 A.2d at 756.

Work product, however, is not beyond pretrial discovery. *Cf.* Jencks Act, 18 U.S.C. § 3500 (1988) (standard for production of statements and reports of witnesses in criminal prosecutions brought by the United States in federal courts). "Such matters might be facts admissible in evidence at the trial or might give clues to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration." *Riddle Spring Realty Co.,* 107 N.H. at 275, 220 A.2d at 756. The determination whether to compel disclosure of work product is a matter for the trial court, which should "consider[ ] the reasons which motivate the protection of the work product of the lawyer together with the desirability of giving every plaintiff and defendant an adequate opportunity to properly prepare his case before trial." *Id.* at 275–76, 220 A.2d at 756.

The work product doctrine applies in criminal as well as civil cases, *Nobles,* 422 U.S. at 238, although not identically. *See* SUPER. CT. R. 35(b)(2), 99, 115. Application of the work product rule in criminal cases, however, has produced few decisions from this court. In *State ex rel. Regan v. Superior Court,* 102 N.H. 224, 153 A.2d 403 (1959), the State appealed an order requiring the State's witnesses to produce certain documents including "all written statements, investigations, reports and laboratory reports" taken by the police or the attorney general in preparation of a homicide case. *Id.* at 225, 153 A.2d at 404. We concluded that there was no precedent for upholding the order and noted that the defendant failed to show "the nature of the writings ordered to be produced, or of their materiality." *Id.* at 229, 153 A.2d at 406. We suggested general guidelines for trial courts:

> We do not hold the [trial court] to be without power, in the exercise of reasonable discretion and to prevent manifest injustice, to require the production of specific objects or

writings for inspection under appropriate safeguards and at a time appropriately close to the time of trial, if it should appear that otherwise essential rights of the respondents may be endangered or the trial unnecessarily prolonged.

*Id.*

Six years later, in *State v. Superior Court,* 106 N.H. 228, 208 A.2d 832 (1965), we encouraged trial courts to grant more extensive discovery to criminal defendants. We noted that the trial court had the power in its discretion, if "justice required, to order the discovery and inspection of any written confession or statement made by the defendant, or any recording or stenographic notes of the same, whether such confession or statement was signed by the defendant or not." *Id.* at 231, 208 A.2d at 834. We excluded from pretrial discovery "notes personally compiled by law enforcement authorities in the course of their investigation, even if they include[d] notes of conversations with the accused," because they "constitute[d] the work product of the State." *Id.* at 230, 208 A.2d at 834. We differentiated, however, between "notes of conversations" and the conversations themselves. *Id.* at 230–31, 208 A.2d at 834. The defendant was allowed, therefore, to discover his own words, but not the reactions to or the conclusions drawn from them by authorities. This brought criminal work product protection closer to the definition in *Riddle Spring Realty Co.* that work product protects the "mental impressions, conclusions, opinions or legal theories" of a lawyer. *Riddle Spring Realty Co.,* 107 N.H. at 275, 220 A.2d at 756.

The defendant essentially makes two arguments in support of his position that the statement of the victim taken by the investigator was protected work product. First, he argues that because the information sought was an investigator's report, it was work product. "As such," he contends, "it was covered by the work-product doctrine and was not discoverable until the investigator was called to testify regarding statements contained in the report." The defendant's position is that simply because an item sought is a statement generated by an investigator acting at the direction of an attorney, it is *per se* work product. With this broad interpretation of work product, however, the defendant fails to focus on what the doctrine is intended to protect.

■ "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Nobles,* 422 U.S. at 238. While it is certainly true that work product may be found in an investigator's report, a witness statement, whether prepared by the witness or by an attorney or an agent of an attorney, should not

automatically be considered work product if it records the observations of the witness rather than mental impressions, conclusions or legal theories of the attorney or investigator. *See Hobbs v. San Diego Mun. Court (People),* 284 Cal. Rptr. 655, 669 (Ct. App. 1991) (witnesses' statements and reports of witness interviews not work product to the extent they merely report what witness said).

■■ When the determination of whether information falls within the attorney work product doctrine is made, the focus ought to be on what substantive information the material contains, rather than simply the form that information takes or how the information was acquired. *See Riddle Springs Realty Co.,* 107 N.H. at 274–75, 220 A.2d at 755. There is a material difference between the words themselves and the reactions to or the conclusions drawn from them by the attorney or investigator. *See State v. Superior Court,* 106 N.H. at 230–31, 208 A.2d at 834. Witness statements that contain purely factual information should not be considered work product. *See State v. Yates,* 765 P.2d 291, 296 (Wash. 1988) (interviews of prosecution witnesses are unlikely to contain "opinions, theories or conclusions" of defense counsel); *People v. Boclair,* 519 N.E.2d 437, 440 (Ill.) ("handwritten notes taken during an interview with a witness are not work product *per se*"), *appeal dismissed,* 484 U.S. 950 (1987); *People v. Lego,* 507 N.E.2d 800, 805 (Ill. 1987) (verbatim statements of witnesses obtained by investigator do not fall within the scope of protection afforded by the work product rule), *cert. denied,* 488 U.S. 902 (1988). As the trial court stated in the instant case:

> [I]n the Court's view, true work product is [comprised of] an attorney's ideas, theories and trial strategy. These areas are protected under the . . . order. Signed statements of trial witnesses are not work product in the strict sense, rather they are more correctly placed in the category of evidence, relevant evidence, that could help a jury determine the credibility of a particular witness.

■ If a report also includes notes of the investigator or attorney recording his or her analysis, mental process, impressions of what the witness said, or reflecting trial strategy, such notes would fall within the work product doctrine and could be redacted from the document after *in camera* review by the trial court.

> At one extreme, a . . . statement made by a witness without any questions by the interviewer is clearly discoverable. At the other extreme, a [statement] is not discoverable if it contains only comments by the attorney concerning his trial strategy or opinions of the strengths and weaknesses of the

case. If the [statement] falls within the two extremes, the trial court must examine it *in camera,* decide which portions are discoverable, and order a copy of the [statement] consisting of those portions to be delivered to the side requesting it.

*Washington v. State,* 856 S.W.2d 184, 188 (Tex. Crim. App. 1993).

The defendant further argues that facts contained in the report must be so unobtainable by the prosecution as to compel pretrial disclosure. In making this argument, the defendant is imposing the civil standard for discovery of protected work product on criminal cases. A comparison of the language employed in Superior Court Rules 35 and 99, however, indicates that the work product doctrine was intended to be applied differently in criminal and civil cases. Rule 35(b)(2) requires a party seeking discovery of documents prepared in anticipation of trial in a civil case to show a "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 35 is not applicable to criminal cases. *See* SUPER. CT. R. 115. In contrast, Rule 99, which governs discovery in criminal cases, establishes a general rule of reciprocal discovery:

The Court may require the parties to exchange or otherwise to inform each other of, and permit each other to inspect and copy or photograph: statements of witnesses; any reports or results, or statements or conclusions relative thereto, of physical or mental examinations; or of scientific tests, experiments or comparisons; or any other reports or statements of experts.

■ Discovery under Rule 99 is not triggered by a showing of "substantial need" and "undue hardship." Rather, the rule leaves the determination of whether to order discovery to the trial court's discretion. *See State v. Heath,* 129 N.H. 102, 109, 523 A.2d 82, 87 (1986); *State v. Booton,* 114 N.H. 750, 753–54, 329 A.2d 376, 380 (1974), *cert. denied,* 421 U.S. 919 (1975); *Riddle Spring Realty Co.,* 107 N.H. at 277–78, 220 A.2d at 757–58. "[B]road and liberal discovery . . . has long been practiced in New Hampshire." *State v. Miskell,* 122 N.H. 842, 847, 451 A.2d 383, 386 (1982).

■ While the trial court must still consider the application of the work product doctrine to a specific discovery request, nothing in Rule 99 suggests that the civil standard of showing inability to obtain the materials from another source applies to criminal cases. Simply because the work product doctrine is applicable to criminal cases as well as civil cases "does not necessarily mean that the doctrine has

exactly the same application in the criminal arena as it does in the civil arena." *Hobbs,* 284 Cal. Rptr. at 670. "Trial court discretion, rather than the rules of civil procedure, governs discovery in criminal cases." *Hicks v. State,* 544 N.E.2d 500, 503 (Ind. 1989). Rule 99 protects work product by allowing trial courts to require parties to exchange "witness statements," not mental impressions, conclusions, opinions or legal theories.

We conclude that the contents of the investigator's report are not work product. Accordingly, the trial court correctly ordered that they be disclosed.

*Affirmed.*

All concurred.