Coos
No. 2003-082

THE STATE OF NEW HAMPSHIRE

v.

TROY W. ZWICKER

Argued: May 6, 2004
Opinion Issued: June 29, 2004

*Peter W. Heed,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Law Offices of Richard N. Foley,* of Portsmouth (*Richard N. Foley* on the brief and orally), for the defendant.

NADEAU, J. The defendant, Troy W. Zwicker, was indicted on one count of possession of crack cocaine and one count of possession of one ounce or more of marijuana with intent to sell. *See* RSA 318-B:2, :26, I(c)(5) (Supp. 2003). Following a jury trial in the Superior Court (*Smith,* J.), he was convicted on both counts. We affirm.

*I. Factual and Procedural Background*

On September 12, 2001, Corporal Richard Plourde of the Berlin Police Department applied for a warrant to search for contraband in the possession of the defendant or other persons present at "39 7th Street, Berlin NH Apt. 1 & 2, and vehicles on his property/yard." In his supporting affidavit, Plourde recounted information provided by at least five confidential informants concerning the defendant's alleged drug-

related activities. The first informant explained to Plourde that the defendant had approached him to sell cocaine, and that the defendant insisted he would only sell large amounts of the drug. The second informant informed Plourde that there was significant foot traffic behind the defendant's residence that he believed involved the sale of drugs. The third informant told Plourde that the defendant had traveled to Manchester on ten different occasions in order to pick up five pounds of marijuana and that the last trip was two weeks ago. He also observed ecstasy, marijuana and crack cocaine in the defendant's bedroom, and explained that the defendant kept his drugs in his grandparents' apartment located directly over his residence. The fourth informant observed illegal drugs in the defendant's dining room. During the week of September 9, the fifth informant told Plourde that he had witnessed illegal drugs in the defendant's apartment and mentioned that the defendant dealt ecstasy, cocaine and marijuana. During that same week, the fifth informant also participated in a "controlled buy" of drugs from the defendant with Plourde.

On September 12, the police and a drug task force arrived at the 7th Street address to execute the warrant. Meanwhile, Detectives Nelson and Stiegler located the defendant elsewhere in Berlin. Stiegler approached him, identified himself, and told the defendant that there was an investigation concerning him and that a search warrant was currently being executed at the 7th Street address. Stiegler then explained to the defendant his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and told him that they were taking him to his residence. The defendant acknowledged that he understood his rights.

Upon their arrival at the defendant's residence, several detectives began talking to the defendant. Then, they approached Captain Morency. Detective Juran asked Morency if he would speak to the defendant because the defendant indicated that he was willing to talk to Morency, but not to the other officers. Morency asked the detectives if the defendant had been read his *Miranda* rights, and they responded affirmatively. Morency asked the defendant if that was correct, and the defendant responded affirmatively. After this exchange, the defendant indicated he was willing to talk to Morency, and made several statements to him. Finally, after unsuccessfully trying to bargain for his "walking papers," the defendant told Morency that he would be cooperative concerning the investigation, and made additional statements. Based upon the evidence seized and the statements made, the defendant was taken into custody.

The defendant was indicted for knowingly possessing or having under his control one ounce or more but less than five pounds of marijuana with intent to sell or dispense and for knowingly possessing crack cocaine. *See*

RSA 318-B:2, :26, I(c)(5). Prior to trial, the defendant moved to suppress his statements and the items seized pursuant to the search warrant.

At the hearing, Susan Goodwin, the defendant's mother, testified that a few minutes after her son arrived, he "kept asking, get me a lawyer, get me a lawyer, get me a lawyer," and that before he was escorted away by the police he hugged her and said to her, "please, get me a lawyer." The defendant testified that he told Stiegler that he did not want to talk and that he "wanted an attorney present if [he was] going to be questioned."

The Superior Court (*Houran*, J.) denied both motions. Concerning the search warrant, the court found that most of the information supplied by the informants occurred within the weeks preceding the application, and that much of it related to events within days of the application. It also found that the information was sufficiently reliable and that two of the informants had been reliable in previous cases. Regarding the defendant's statements to the police, the court concluded they were voluntary beyond a reasonable doubt. The court found that the defendant was read his *Miranda* rights and understood them. The court also found that the defendant's assertion that he requested an attorney after his *Miranda* rights were recited to him was not credible "given the inconsistencies in his statements concerning that request during his testimony and given the other testimony received."

During the first trial, the government's first witness, Plourde, was questioned concerning two pieces of identification that he found in a bedroom at the 7th Street address. During Plourde's explanation, defense counsel objected. Before the court had an opportunity to rule on the objection, the witness stated that he found the defendant's identification from the Concord Prison. The defendant immediately moved for a mistrial with prejudice arguing that the witness's statement was highly prejudicial and could not be rehabilitated by curative jury instructions. In arguing for a mistrial with prejudice, the defendant contended that the officer, with eleven years of experience, engaged in clearly inappropriate conduct. The court declared a mistrial because no curative instructions could erase the prejudice resulting from the reference to the defendant's past criminal convictions. In dismissing the case without prejudice, the court expressly found that the improper testimony was "completely inadvertent on the part of the County Attorney's Office and completely without malice or ill intent and also inadvertent on the part of Officer Plourde." Thus, the court found that double jeopardy would not bar retrial.

During the second trial in Superior Court (*Perkins*, J.), the State questioned Officer Nelson, its first witness, concerning his role in the search for the defendant. After indicating that he was responsible for locating the defendant, Nelson testified that the defendant was

purportedly "going to Rockingham Street, or to maybe see his probation officer." Again, the defendant objected and moved for a mistrial. The court granted the motion, and dismissed the case without prejudice.

During the third trial, the jury could have found the following facts. While executing the search warrant at the defendant's residence, the police discovered a marijuana cigarette, a marijuana pipe and rolling papers, items that are typically used by someone who uses or intends to sell marijuana. The police also discovered a homemade smoking device evidencing crack cocaine residue and plastic bags containing various quantities of marijuana, including marijuana seeds and stems. The police found a digital scale, the type of device used to weigh cocaine or marijuana. The total weight of the marijuana in one paper bag and one plastic bag was 3.17 ounces, and the total weight of the marijuana in four other plastic bags was 23.87 ounces. The buds, leaves and stems of the marijuana all contain tetrahydrocannabinol, the active ingredient in the drug, and all those parts are usable as a controlled drug. The defendant confessed to Morency that he had "gotten rid of" some ecstasy and marijuana, and that he was purchasing marijuana in five pound lots, and bottles of ecstasy pills. He also told Morency that there were bags of marijuana stems, seeds, and a scale in the house.

At the close of the State's evidence, the defendant moved for a directed verdict of not guilty. He argued that a reasonable trier of fact could not find beyond a reasonable doubt that he possessed a crack cocaine pipe or possessed marijuana in excess of one ounce with intent to distribute because the State had failed to establish that he had dominion or control over the area where the drugs were found. The court denied the motion.

During deliberations, the jury asked the court the following question: "Does the possession of 'shake' (remnants of processing) that is non-saleable, still constitute possession with intent to distribute?" The defendant argued that the matter contained in the plastic bags was "mostly mature stalks," and therefore should be excluded from the definition of "Cannabis-type drug" under RSA 318-B:1. He also argued that if the matter is non-saleable, "it can't be for possession with intent to distribute." In response, the State contended that "[t]here is [a] difference between stems and stalks, and what was in the bag is stems, not stalks." Over the defendant's objection, the court answered the jury's question, "yes." The jury convicted the defendant on both counts.

On appeal, the defendant raises seven arguments. He first argues that the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant. He next contends that his *Miranda* rights were violated because the police failed to honor scrupulously his invocation of his right to remain silent. Third, he contends that the State violated his

double jeopardy rights, and thus, the trial court should have declared a mistrial with prejudice. Fourth, he argues that the trial court erred in its answer to the jury's question. Fifth, he argues that the trial court erred in ordering him to provide the State with a summary of testimony that he expected to elicit from two witnesses. Next, he contends that the trial court should have directed a verdict of not guilty. Finally, he contends that his speedy trial rights were violated by the State's purported misconduct during trial. We first address his three constitutional claims under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal authority for guidance only, *id.* at 233.

## II. Analysis

### A. Search Warrant

The defendant first argues that the trial court should have suppressed evidence seized pursuant to the search warrant. He attacks the informants' reliability and the credibility and staleness of the information they provided. *See* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. In contrast, the State contends that the information was credible and not stale, and that the police sufficiently corroborated it by conducting a "controlled buy" of marijuana from the defendant.

■■ Part I, Article 19 requires that search warrants be issued only upon a finding of probable cause. *State v. Cannuli*, 143 N.H. 149, 151 (1998). "Probable cause exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." *Id.* (quotation omitted). To establish probable cause, the affiant need only present the magistrate with sufficient facts and circumstances to demonstrate a substantial likelihood that the evidence or contraband sought will be found in the place to be searched. *Id.* at 151-52. We apply a totality-of-the circumstances test to determine whether information obtained from an informant supports a finding of probable cause. *State v. Johnson*, 140 N.H. 573, 576 (1995). In utilizing this approach, we consider the veracity and basis of knowledge of the informant, in addition to other indicia of reliability, such as corroboration by police officers. *Id.*

■ We review the trial court's order *de novo*, except as to any controlling facts determined at the trial court level in the first instance. *Cannuli*, 143 N.H. at 152. We assign great deference to the magistrate's determination of probable cause, and do not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense. *Id.* We

interpret affidavits in support of search warrants realistically and with common sense. *Id.*

■ Based upon the totality of the circumstances, we find that there was probable cause to issue the search warrant here. In his application for a search warrant and supporting affidavit, Plourde recounted information from at least five cooperating individuals. The trial court found that most of the information presented by Plourde related to events occurring within the weeks immediately preceding the application. Plourde had previously received reliable information from two of the informants, the information was sufficiently detailed to indicate a high degree of credibility, and the officers conducted a "controlled buy" with one informant within a week of the application. Considering all of the circumstances, we conclude that Plourde clearly presented the magistrate with sufficient facts to demonstrate a substantial likelihood that drug-related activities were occurring at the defendant's residence. *See State v. Hazen*, 131 N.H. 196, 202 (1988). Therefore, the trial court correctly denied the defendant's motion to suppress the evidence seized pursuant to the search warrant.

### B. Miranda

The defendant next contends that his State and federal constitutional rights were violated because the police failed to honor scrupulously his invocation of his right to remain silent. *See State v. Laurie*, 135 N.H. 438, 442, *cert. denied*, 506 U.S. 886 (1992); N.H. CONST. pt. I, art. 15; U.S. CONST. amend. V. In contrast, the State contends that the trial court ruled correctly because the manifest weight of evidence demonstrates that the defendant was given his *Miranda* warnings, indicated that he fully understood them, and voluntarily waived them.

■ Under Part I, Article 15 of our State Constitution, in order to introduce statements into evidence made by a defendant during a custodial interrogation, the State must prove beyond a reasonable doubt that the defendant was warned of his constitutional rights, that he waived those rights, and that any subsequent statements were made knowingly, voluntarily and intelligently. *State v. Spencer*, 149 N.H. 622, 624 (2003). To be considered voluntary, a confession must be the product of an essentially free and unconstrained choice and not extracted by threats, violence, direct or implied promises of any sort, or by exertion of any improper influence. *State v. Fleetwood*, 149 N.H. 396, 402-03 (2003). In determining the voluntariness of a statement, the court must examine the totality of the surrounding circumstances. *Spencer*, 149 N.H. at 627. We will not reverse the trial court's findings on the issue of waiver unless the manifest weight

of the evidence, when viewed in the light most favorable to the State, is to the contrary. *State v. Duffy*, 146 N.H. 648, 650 (2001).

In the instant case, the defendant's argument is based upon the assumption that he originally invoked his *Miranda* rights. After a review of the record, we uphold the trial court's finding that he did not. The defendant concedes that Officer Stiegler read him his *Miranda* rights before he was placed in the cruiser. He also indicated that he understood his rights. The defendant testified, however, that he told Stiegler that he had nothing to say and that he wanted an attorney present if he were going to be questioned. Officer Morency testified that before he spoke to the defendant at the 7th Street address, he confirmed with the other officers as well as the defendant that the officers had read him his *Miranda* rights. Then, the defendant acknowledged that he was willing to talk to Morency.

The trial court concluded that considering the totality of the circumstances, the defendant's statements were voluntary beyond a reasonable doubt. The trial judge specifically found that "given the inconsistencies in [the defendant's] statements concerning [his *Miranda*] request during his testimony and given the other testimony received, [he] is not credible." In an attempt to bolster the defendant's testimony, his mother testified that he repeatedly asked her to "get [him] a lawyer." Goodwin, however, was not present during the time that the defendant purportedly invoked his *Miranda* rights. Nor was she present when the police questioned the defendant outside the 7th Street apartment. Thus, her testimony has little relevance.

 The trial court's findings that the defendant's statements were voluntary are not against the manifest weight of the evidence, when viewed in the light most favorable to the State. Because the defendant did not invoke his *Miranda* rights, we need not determine whether the police scrupulously honored those rights. Accordingly, the trial court correctly denied the defendant's motion to suppress his statements.

### C. Double Jeopardy

Next, the defendant contends that in the first and second trials, two officers intentionally tried to introduce prejudicial evidence, thereby violating his double jeopardy rights. *See* N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V. Therefore, the trial court should have granted his motion for a mistrial with prejudice. The State argues that the trial court properly dismissed the first two trials without prejudice because the court correctly found that the improper testimony was inadvertently given

during the first trial and did not amount to prosecutorial or judicial overreaching sufficient to bar reprosecution in either case. We agree.

██ Absent an unsustainable exercise of discretion, we will not overturn the trial court's decision concerning a mistrial order. *See Petition of Brosseau*, 146 N.H. 339, 341 (2001); *State v. Bertrand*, 133 N.H. 843, 855 (1991); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

██ Generally, when a defendant's request for a mistrial is granted, a retrial on the same charge is not barred by double jeopardy. *State v. Duhamel*, 128 N.H. 199, 202 (1986). On the other hand, when, by reason of prosecutorial or judicial overreaching that is intended either to provoke the defendant "into requesting a mistrial or to prejudice his prospects for an acquittal," *United State v. Dinitz*, 424 U.S. 600, 611 (1976), the defendant requests and obtains a mistrial, the Double Jeopardy Clause prohibits a retrial. *State v. Scarlett*, 121 N.H. 37, 39 (1981). To establish prosecutorial overreaching, the defendant must show that the government, through gross negligence or intentional misconduct, caused aggravated circumstances to develop that severely prejudiced the defendant. *State v. Lake*, 125 N.H. 820, 823 (1984). Therefore, a retrial is permitted unless the defendant, by conduct and design of the State, has been painted into a corner leaving a motion for mistrial as the only reasonable means of avoiding becoming a victim of unlawful tactics or inadmissible evidence. *State v. Montella*, 135 N.H. 698, 700 (1992). Whether the prosecution so intended is a matter of fact to be decided by the trial court. *Duhamel*, 128 N.H. at 203.

The defendant has a difficult burden to meet. For instance, even when a prosecutor referred to the defendant as a "crook" while questioning a witness, the United States Supreme Court found that the statement did not amount to prosecutorial overreaching sufficient to prohibit retrial. *Oregon v. Kennedy*, 456 U.S. 667, 669, 679 (1982). The Supreme Court noted that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676.

██ Here, at the first trial, after the defendant moved for a mistrial with prejudice, the court expressly found that the objectionable testimony was "completely inadvertent on the part of the County Attorney's Office and completely without malice or ill intent and also inadvertent on the part of Officer Plourde." There was no evidence that Plourde's testimony was intended to goad the defendant into moving for a mistrial. Thus, we agree

with the trial court's factual determination that the prosecution did not engage in overreaching.

■ During the second trial, Officer Nelson testified that the defendant was purportedly "going to Rockingham Street, or to maybe see his probation officer." Without an express finding concerning any potential misconduct by the officer, the judge declared a mistrial and dismissed the case without prejudice. When the prejudicial statement was made, however, the prosecution was merely extracting preliminary information from its first witness regarding the search he conducted for the defendant at the time of his arrest. Nothing in the record indicates that the government engaged in intentional misconduct or gross negligence during Officer Nelson's testimony. Nor has the defendant shown that the State intended to provoke him into seeking a mistrial. Accordingly, the trial court did not commit an unsustainable exercise of discretion in ordering the mistrial without prejudice in the second trial. Therefore, we conclude that the Double Jeopardy Clause did not bar retrial in either case.

As to all of the defendant's constitutional arguments, the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See State v. Daniel*, 142 N.H. 54 (1997) (probable cause for warrant); *Illinois v. Gates*, 462 U.S. 213, 238-46 (1983) (probable cause for warrant); *Spencer*, 149 N.H. at 627 (*Miranda* waiver); *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986) (applying preponderance of the evidence standard to voluntariness of *Miranda* waiver); *Duhamel*, 128 N.H. at 203 (double jeopardy); *Kennedy*, 456 U.S. at 675-76 (double jeopardy). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

### D. Jury Question

During deliberations, the jury asked the court the following question: "Does the possession of 'shake' (remnants of processing) that is non-saleable, still constitute possession with intent to distribute?" The defendant argues that the trial court erred in answering this question affirmatively. Specifically, he contends that "[w]ere the Jury to decide that the seeds, stems and stalks were remnants of processing and [thus] not saleable ... the State would have failed to have proved ... that the Defendant possessed the material with the intent to sell or give it to somebody."

■ "We evaluate a claim that the trial court refused to answer a jury question in language requested by the defendant in the context of the entire charge and all of the evidence." *State v. Seymour*, 140 N.H. 736, 746,

*cert. denied,* 519 U.S. 853 (1996) (quotation omitted). It is within the trial court's discretion to decide how best to aid the jury in its deliberations; the court has no obligation to answer the jury's question with the specific language requested by the defendant. *Id.* Absent an unsustainable exercise of discretion, we will not overturn its decision. *Cf. Lambert,* 147 N.H. at 296 (explaining unsustainable exercise of discretion standard).

██ During the jury charge, the trial judge explained that RSA 318-B:2 requires the State to prove beyond a reasonable doubt:

> [O]ne, that the defendant had the drug under his custody and control; two, that the defendant knew that the drug was in his vicinity; three, that the defendant knew that the drug found was marijuana; four, that the drug found was in fact marijuana; and five, that the defendant possessed the drug with the intent to sell or distribute it to other persons, or other people.
>
> To decide whether the defendant specifically intended to distribute the drug, you may consider the quantity of drugs found, other evidence found along with the drugs, or any other evidence which you may consider relevant. The State does not have to prove that the defendant intended to sell the drugs for profit, only that he intended to distribute or give the drugs to another person. Distribution is any form of transfer of the drug to another, or an intent to so transfer by sale, gift, or any means, and whether for profit or not.

Despite the jury's question concerning the saleability of the drugs, the trial judge had previously instructed the jury that it is the defendant's intent to sell or distribute the drug that determines his criminal liability. While supplementary instructions might have better clarified this issue for the jury, in the context of the entire charge as well as all of the evidence, we cannot conclude that the trial judge committed an unsustainable exercise of discretion by answering the jury's question "yes."

*E. Work Product*

The defendant next contends that the trial court erred in ordering him to provide the State with a summary of testimony that he expected to elicit from two witnesses. Specifically, he argues that the order required his counsel to reproduce a summary of witness interviews that reflected mental impressions and theories of his defense, thereby violating the work-product doctrine. The State contends that the court properly required disclosure of the substance of the witnesses' testimony because

the information sought was merely a factual summary, and thus not protected work product.

■ "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). We have defined work product as the "result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation. The lawyer's work must have formed an essential step in the procurement of the data which the opponent seeks, and he must have performed duties normally attended to by attorneys." *Riddle Spring Realty Co. v. State*, 107 N.H. 271, 274 (1966). While the work product of an attorney consists generally of his mental impressions, conclusions, opinions, or legal theories, witness statements that contain purely factual information do not fall within the ambit of the doctrine. *State v. Chagnon*, 139 N.H. 671, 674, 676 (1995).

Determining whether information is protected work product requires the court to focus upon the substantive information that the material contains, rather than the form the information takes or how it was acquired. *Id.* "There is a material difference between the words themselves and the reactions to or the conclusions drawn from them by the attorney or investigator." *Id.*

> While it is certainly true that work product may be found in an investigator's report, a witness statement, whether prepared by the witness or by an attorney or an agent of an attorney, should not automatically be considered work product if it records the observations of the witness rather than mental impressions, conclusions or legal theories of the attorney or investigator.

*Id.* at 675-76.

In *Chagnon*, the State sought discovery of copies of statements of witnesses that the defendant actually intended to call at trial taken by the defendant's counsel, his private investigator or anyone acting on his behalf. *Id.* at 672. After conducting an *in camera* review of an unredacted witness statement provided by the defendant, the trial court found the entire interview report contained only factual statements by the witness and granted the State's motion to compel discovery. *Id.* at 672-73. We affirmed, adopting the position that true work product is comprised of an attorney's ideas, theories and trial strategy, not witness statements recorded in an investigative file under the control of the defendant. *Id.* at 676, 678.

In a companion case, the superior court ordered a defendant to provide the State with, among other things, "copies of any written statements

signed by those witnesses that pertain solely to the witness's testimonial content; or statements taken by the defense not signed by the witness but containing the written recollection of the events of which he or she will testify." *State v. Drewry*, 139 N.H. 678, 680 (1995). We concluded that the order requires production of only those parts of the reports of those interviews that contain the substance of the witness's statement, and that a "report that merely analyzes facts and renders an opinion as to what occurred without reflecting or discussing the theories, mental impressions, or litigation plans of the defense attorneys should not be considered work product." *Id.* at 682.

 Here, the trial court ordered defense counsel to provide a summary of the expected testimony of two witnesses. Focusing on the substantive information that the material contains, rather than the form that information takes or how it was acquired, leads us to the conclusion that this summary is not work product. Although the court required defense counsel to recall by memory the information provided to him by the witnesses, the information was purely factual and did not reflect any mental impressions or defense strategies. Therefore, the court did not err in requiring disclosure of this information.

### F. Directed Verdict/Speedy Trial

The defendant also argues that the trial court erred in denying his motion for a directed verdict of not guilty and that his speedy trial rights were violated by the State's purported misconduct during trial, *see* N.H. CONST. pt. I, art. 14; U.S. CONST. amend. VI. These arguments, however, were not properly preserved for appellate review.

"The general rule in this jurisdiction is that a contemporaneous and *specific* objection is required to preserve an issue for appellate review." *State v. Blackmer*, 149 N.H. 47, 48 (2003) (quotation omitted; emphasis added). First, the defendant failed to inform the trial court of his specific reason for seeking the motion for a directed verdict, *i.e.*, that the State had failed to prove the defendant possessed in excess of one ounce of marijuana because it failed to utilize expert testimony or introduce evidence to establish "a more definitive breakdown by weight between prohibited parts of the cannabis genus of plants and the non-actionable mature stalks and non-germinative seeds." Next, despite the defendant's contention to the contrary, he did not assert his speedy trial right merely by "being prepared to go forward each and every time the case was set for Trial" or by making a general objection to the State's request for a motion

to continue. *See id.* Thus, because these issues are not properly preserved, we decline to address them.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.