NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2019-0120


BALZOTTI GLOBAL GROUP, LLC & a.

v.

SHEPHERDS HILL PROPONENTS, LLC & a.

Argued: March 4, 2020
Opinion Issued: May 27, 2020

Devine, Millimet & Branch, Professional Association, of Manchester (Matthew R. Johnson on the brief and orally), for the plaintiffs.

Bussiere & Bussiere, P.A., of Manchester (Emile R. Bussiere, Jr. on the joint brief and orally), for defendant Ernest J. Thibeault, III; Preti Flaherty, of Concord (John M. Sullivan on the joint brief and orally), for defendants Shepherds Hill Development Co., LLC and Shepherds Hill Proponents, LLC.

McLane Middleton, Professional Association, of Manchester (Jeremy T. Walker and Joseph A. Foster), for defendant Ralph Caruso, joined in the brief of Ernest J. Thibeault, III.

Moriarty Troyer & Malloy LLC, of Braintree, Massachusetts (Thomas W. Aylesworth on the brief and orally), for defendant Shepherds Hill Homeowners Association, Inc.

HICKS, J. The plaintiffs, Balzotti Global Group, LLC (the Global Group) and Caesar Balzotti, Sr., appeal an order of the Superior Court (Wageling, J.) dismissing their claims against the defendants, Shepherds Hill Proponents, LLC (the Proponents), Shepherds Hill Development Company, LLC (the Development Company), Shepherds Hill Homeowners Association, Inc. (the Association), Ralph Caruso, and Ernest J. Thibeault, III, on the ground that their claims are time-barred. See RSA 508:4, I (2010). We affirm.

## I. Facts

The pertinent facts as found or recited by the trial court or as appear in the record follow. The Global Group is a national company owned by Balzotti's wife and son. Balzotti is its CEO and Chairman. Although he does not own the company, he plays a dominant role and oversees each project the company undertakes from planning through completion. Balzotti is a well-resourced, sophisticated businessman, with more than 30 years of experience in construction and real estate. He has completed condominium projects in many states, including Massachusetts and New Hampshire.

The instant lawsuit arises from a failed condominium development project. At some point before 1999, the Development Company obtained approval to construct 400 condominium units in Hudson. After work had begun on the project, the real estate market collapsed, and the Development Company filed for bankruptcy.

Balzotti, Caruso, and Thibeault proposed to reorganize the Development Company so that the project could be completed and creditors could be paid. Their proposal included creating the Proponents, a limited liability company in which Caruso and Thibeault would each have a 40% interest and Balzotti would have a 20% interest. In turn, the Proponents would own the Development Company.

The bankruptcy court accepted the proposal as the reorganization plan in 2000. As part of the bankruptcy plan, the Development Company issued a $714,000 promissory note to Balzotti's wife (the Note) that was guaranteed by the Proponents and Thibeault. According to the plaintiffs, the Note was interest-free if paid within five years. The plaintiffs allege that the bankruptcy plan "contemplated that [the Development Company] would fully complete the [condominium] Development Project such that it could repay the . . . Note," and

2

that "[a]s units were sold, proceeds from the sale would be used to pay down the creditors." The bankruptcy plan contemplated that all creditors, including the Note holder, would be paid in full through the development and sale of new condominium units.

On February 25, 2003, the Development Company established the Shepherds Hill Condominium by recording a declaration of condominium with the county registry of deeds. The initial declaration contemplated the construction of 100 units, with the Development Company reserving the right to construct an additional 300 units, for a maximum of 400 units. The declaration created the Association to administer the condominium complex.

The next day, the Development Company filed an amendment to the declaration, which explicitly stated that the Development Company had "until February 25, 2013 to complete conversion of Units located within the convertible land as described in the Declaration of Condominium." See RSA 356-B:3, X (2009) (defining "convertible land" as "a building site which is a portion of the common area, within which additional units and/or a limited common area may be created"), :23, III (2009) (providing that "[n]o [condominium] conversion shall occur after 5 years from the recordation of the declaration, or such shorter period of time . . . as the declaration may specify, provided, however, that the time limit contained in the declaration may be extended by not more than 5 years by an amendment to the declaration").

Between February 26, 2003, and July 6, 2009, the Development Company periodically exercised its right to build new condominium units on convertible land. However, by July 6, 2009, only 274 out of the possible 400 units had been constructed.

In August 2010, Balzotti's wife issued a demand for payment on the Note to the Development Company, the Proponents, and Thibeault, asserting that they were in default. Thereafter, Balzotti, through his wife, brought involuntary bankruptcy proceedings against the Development Company, the Proponents, and Thibeault (the bankruptcy defendants). In September 2010, however, the bankruptcy court dismissed the proceedings without prejudice on the ground that, as filed, they did not comply with the bankruptcy code. The bankruptcy court found that the proceedings had been brought in bad faith, in part to pressure Thibeault to pay the Note, and ordered Balzotti to pay attorney's fees and punitive damages.

By 2011, pursuant to the original condominium declaration, the Association was governed by a board elected by the condominium unit owners. Later that year, the Development Company offered to contribute to the Association's capital account and construct certain amenities in exchange for being granted an additional five years to construct all or some of the remaining 126 condominium units. The Association declined the offer.

In response, on February 22, 2013, the Development Company recorded a "Twenty-Fourth Amendment" to the declaration in the county registry of deeds, which purported to create three "Land Only Units" from undeveloped portions of the condominium common area (the Twenty-Fourth Amendment). The Development Company recorded the Twenty-Fourth Amendment without the Association's knowledge or consent. On February 26, 2013, the Association ordered the Development Company to remove its construction equipment from the condominium complex. The Development Company declined, relying upon the Twenty-Fourth Amendment.

The Association subsequently brought a complaint for declaratory and injunctive relief against the Development Company seeking, among other things, a declaration that the Twenty-Fourth Amendment is void and unenforceable. On March 18, 2014, the trial court ruled in favor of the Association. In addition to voiding the Twenty-Fourth Amendment, the court ruled that the Development Company's right to develop convertible land into condominium units (the Development Right) expired on February 26, 2013, and that the undeveloped common land now belonged to the condominium unit owners, subject to the control of the Association. See RSA 356-B:23, III. The Development Company appealed the trial court's decision to this court.

While the appeal was pending, Balzotti orchestrated the reassignment of the Note to the Global Group. According to Thibeault, but disputed by Balzotti, the two met during the summer of 2014 to discuss the Note and the status of the Shepherds Hill condominium development. According to Thibeault, he informed Balzotti about the litigation and the pending appeal at that meeting. In April 2015, we issued an unpublished order affirming the trial court's 2014 decision. See Shepherds Hill Homeowners Association, Inc. v. Shepherds Hill Development Co., LLC, No. 2014-0306, 2015 WL 11071128 (N.H. April 2, 2015).

In February 2018, the plaintiffs sued the Development Company, the Proponents, Caruso, and Thibeault, asserting a number of claims arising out of the Development Company's loss of the Development Right. The plaintiffs also moved to attach the condominium property itself to satisfy any potential judgment. The Association intervened in the lawsuit, objecting to the attachment. In response, the plaintiffs amended their complaint to assert equitable claims against the Association. At a June 2018 hearing, the plaintiffs clarified that they sought only to attach the Development Right, not the condominium property.

Also at that hearing, the plaintiffs informed the court that they again intended to amend their complaint. According to the proposed second amended complaint, the plaintiffs allege that: (1) the Development Company, the Proponents, and Thibeault breached the Note by losing the Development Right; (2) Thibeault and Caruso breached the implied covenant of good faith

4

and fair dealing by failing to preserve that right; and (3) the Association, which they alleged now owns the Development Right, should be equitably estopped from profiting from it.

The defendants argued in various motions that the plaintiffs' claims are time-barred because they were brought more than three years after the Development Right was lost. See RSA 508:4, I. Invoking the "discovery rule," the plaintiffs argued that their claims are timely, in part, because Balzotti did not know and could not have reasonably discovered that the Development Right had been lost until he learned, in 2016, that we had affirmed the trial court's 2014 decision. See id. (providing that "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of").

The trial court held an evidentiary hearing "to determine when Balzotti knew or should have known about the loss of the development rights." Following the hearing, the trial court ruled that Balzotti knew, or reasonably should have known, that the Development Company had lost the Development Right either by February 2013, when, by operation of statute, the right was lost, see RSA 356-B:23, III, or by the summer of 2014, when, the court found, Thibeault informed Balzotti about the trial court's 2014 decision. Therefore, the plaintiffs' claims brought in February 2018 were time-barred. See RSA 508:4, I. The plaintiffs unsuccessfully moved for reconsideration, and this appeal followed.

II. Analysis

In reviewing a trial court decision rendered after an evidentiary hearing, "we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous." O'Malley v. Little, 170 N.H. 272, 275 (2017) (quotation omitted). "We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." Id. (quotation omitted). "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id. (quotation omitted). Nevertheless, we review the trial court's application of the law to the facts and its legal rulings de novo. See id.

A. Judicial Estoppel

The plaintiffs argue that the bankruptcy defendants are barred by the doctrine of judicial estoppel from asserting the statute of limitations as an

5

affirmative defense. "The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Cohoon v. IDM Software, 153 N.H. 1, 4 (2005) (quotation omitted). Three factors "typically inform the decision whether to apply the doctrine in a particular case": (1) "whether the party's later position is clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. (quotations omitted).

The plaintiffs contend that the bankruptcy defendants are judicially estopped from raising a statute of limitations defense to the plaintiffs' 2018 claims because, in the 2010 bankruptcy proceedings, the defendants "argued no payments were due on the Note yet, which meant they could not be in breach, and no statute of limitations had begun to run." Given that the bankruptcy proceedings took place at least three years before the defendants assert the statute of limitations began to run, and that the bankruptcy court dismissed the bankruptcy proceedings on procedural grounds, we are not persuaded by the plaintiffs' judicial estoppel argument.

### B. Discovery Rule

The plaintiffs next challenge the trial court's determination that the discovery rule does not save their claims. RSA 508:4, I, codifies the common law discovery rule. Dobe v. Comm'r, N.H. Dep't of Health & Human Services, 147 N.H. 458, 461 (2002). It provides that all personal actions, except those for slander and libel, must be brought within three years of the act or omission complained of "except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission," then the action must be commenced within three years of "the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I. Once a defendant has established that the statute of limitations would bar an action, the plaintiff has the burden of raising and proving that the discovery rule is applicable to an action that would otherwise be barred by the statute of limitations. Dobe, 147 N.H. at 461.

According to RSA 508:4, I, the three-year limitations period does not begin to run until two prongs are satisfied: first, a plaintiff must know or reasonably should have known that it has been injured; and second, a plaintiff must know or reasonably should have known that its injury was proximately caused by conduct of the defendant. See Beane v. Dana S. Beane & Co., 160 N.H. 708, 713 (2010). To obtain the benefit of the discovery rule and overcome the defendant's statute of limitations defense, the plaintiff must prove that at

6

least one prong was not yet satisfied at a time within three years of the plaintiff's commencement of the action.  See id.  Thus, the discovery rule does not apply unless the plaintiff proves that the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the defendant's alleged wrongful act or omission.  See id.

The rule "is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself."  Furbush v. McKittrick, 149 N.H. 426, 431 (2003).  "Rather, that the plaintiff could reasonably discern that he suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable."  Id.; see Dobe, 147 N.H. at 461.  "Further, a plaintiff need not be certain of this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule."  Beane, 160 N.H. at 713.

"Whether the plaintiff exercised reasonable diligence in discovering the causal connection between the injury and the defendant's alleged act or omission is a question of fact."  Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 825 (2005).  Moreover, whether to apply the discovery rule is "an issue . . . that is equitable in nature."  Keshishian v. CMC Radiologists, 142 N.H. 168, 179 (1997).  We review a trial court's decision to grant equitable relief for an unsustainable exercise of discretion.  Benoit v. Cerasaro, 169 N.H. 10, 19 (2016).  In doing so, we determine whether the record establishes an objective basis sufficient to sustain the discretionary judgment made.  Id. at 20.  The party asserting that a ruling denying equitable relief is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case.  See id.

Crediting the allegations in the plaintiffs' proposed second amended complaint, the trial court determined that the injury or damage at issue is the plaintiffs' inability to collect on the Note through the sale of new condominium units, and that the acts or omissions complained of concern the Development Company's loss of the Development Right, the failure of Thibeault and Caruso to safeguard it, and the possibility that the Association would wrongfully profit from it.  For ease of reference, we refer to those acts and omissions, collectively, as the loss of the Development Right.

The trial court found that, in February 2013, Balzotti knew, or reasonably should have known, that the Development Right had been lost because: (1) it interpreted RSA 356-B:23, III to provide that a developer has no more than 10 years to convert convertible land into condominium units; and (2) the first amendment to the declaration, filed on February 26, 2003, expressly stated that the Development Company's right to convert convertible land expired on February 25, 2013.

7

The plaintiffs argue that Balzotti could not have known that the Development Right had been lost because, had he conducted a title search in February 2013, he would have discovered the Twenty-Fourth Amendment. The plaintiffs contend that the Twenty-Fourth Amendment, filed on February 22, 2013, would have led Balzotti reasonably to believe that the Development Company had timely <u>exercised</u> the Development Right, not lost it.

We need not address the plaintiffs' arguments concerning the effect of the amendments, because even if we were to agree with them regarding the effect of the Twenty-Fourth Amendment, notwithstanding Balzotti's admission at trial that he did not conduct a title search before May 2015, they would not prevail. As soon as Balzotti was aware of the trial court's adverse decision in March 2014, he knew, or reasonably should have known, of the injury (the inability to collect on the Note through the sale of new condominium units), the acts or omissions complained of (the loss of the Development Right), and the causal connection between the two. <u>See</u> <u>Draper v. Brennan</u>, 142 N.H. 780, 782, 787 (1998) (concluding, in a legal malpractice case, that the trial court's adverse decision on the plaintiff's motion to enforce a settlement agreement should have alerted him to a potential connection between his harm and his lawyer's alleged error in drafting the agreement).

Here, the trial court found, and the record supports its finding, that Balzotti learned of the trial court's March 2014 decision when he met with Thibeault in the summer of 2014. Although Balzotti testified that he did not meet with Thibeault and learn about the trial court's decision until March or April 2015, the trial court specifically found Thibeault more credible than Balzotti on this point. The trial court was entitled to credit Thibeault's account over Balzotti's, and we defer to its credibility determinations. <u>See</u> <u>O'Malley</u>, 170 N.H. at 275. Although the plaintiffs argue that Balzotti's account was corroborated, and Thibeault's was not corroborated, we cannot say as a matter of law that the trial court erred by crediting Thibeault over Balzotti.

The plaintiffs argue that, even if Balzotti knew of the March 2014 decision that summer, that knowledge was insufficient to trigger the running of the statute of limitations. The plaintiffs contend that, regardless of when Balzotti learned of the trial court decision, the statute of limitations could not have started to run until that decision became final when we upheld it on appeal. Only then, they argue, could Balzotti have known that the Development Right had truly been lost.

However, for the discovery rule to apply, it was not necessary for the full extent of Balzotti's alleged harm to have manifested itself. <u>See</u> <u>Furbush</u>, 149 N.H. at 431. Rather, for the purposes of the discovery rule, it was sufficient that Balzotti could "reasonably discern that he suffered some harm caused by the [defendants'] conduct." <u>Id</u>. As soon as Balzotti learned of the trial court's

8

order, he should have been able to "reasonably discern" that he suffered "some harm" as a result of the defendants' conduct.  Id.

Nor was it necessary for Balzotti to be certain of the causal connection between his harm and the defendants' acts and omissions (the loss of the Development Right).  See Pichowicz v. Watson Ins. Agency, 146 N.H. 166, 168 (2001).  The possibility of that causal connection sufficed.  See id.; see also Dobe, 147 N.H. at 461; Draper, 142 N.H. at 786.

Thus, as soon as Balzotti learned of the trial court's decision, he should have been aware of his harm, of the defendants' acts or omissions, and of the causal relationship between the two.  Accordingly, we disagree with the plaintiffs that the statute of limitations was tolled until the appellate process was complete and the superior court's 2014 decision became final.  See Draper, 142 N.H. at 787.

Therefore, even if Balzotti could not have reasonably known in February 2013 that the Development Right had been lost, the evidence supports the trial court's finding that he reasonably should have known that it was lost by the summer of 2014.  We, therefore, uphold that finding, and hold that the plaintiffs' 2018 claims, filed more than three years later, are time-barred.

In light of our decision, we need not address the plaintiffs' assertions regarding the trial court's finding that Balzotti acted unreasonably by relying upon Thibeault for information about the development project and its related finding that Balzotti failed to exercise reasonable diligence.  Because we need not address the trial court's finding that Balzotti did not exercise reasonable diligence, we also need not address the plaintiffs' arguments that the trial court erroneously admitted or failed to admit certain evidence relevant to that finding or that it impermissibly expanded the scope of the evidentiary hearing so as to admit such evidence.

The plaintiffs argue that their equitable claims against the Association are not time-barred.  They assert that the Association is the successor to the Development Company's obligations to pay the Note pursuant to the bankruptcy plan and contend that the statute of limitations has not yet run on their claims against the Association "because it is unclear whether the Association will or will not comply with the terms of [that plan]."  However, as the Association correctly observes, the plaintiffs fail to explain how the Association could possibly become the successor to the Development Company's obligations to pay the Note under the bankruptcy plan.  Under these circumstances, we consider the plaintiffs' argument insufficiently developed for our review.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

9

C.  Admission of Certain Evidence

The plaintiffs next contend that the trial court unsustainably exercised its discretion by admitting a timeline of events into evidence.  The trial court found, based upon Balzotti's testimony during voir dire, that his son had created the timeline to help Balzotti remember dates when testifying.  The plaintiffs objected to the timeline's admission on the ground that it constituted attorney work product because it had been prepared at counsel's request.  The trial court disagreed, finding that the timeline was merely "a recitation of facts" prepared by Balzotti's son and did not contain "the opinion of [the plaintiffs' attorney] in any way."

We review the trial court's decision to admit the timeline into evidence under our unsustainable exercise of discretion standard.  See Yoder v. Town of Middleton, 152 N.H. 363, 368 (2005).  To prevail under this standard, the plaintiffs must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of their case.  See id.

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  State v. Zwicker, 151 N.H. 179, 191 (2004) (quotation omitted).  "We have defined work product as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation."  Id. (quotation omitted).  For the work product doctrine to apply, "[t]he lawyer's work must have formed an essential step in the procurement of the data which the opponent seeks, and he must have performed duties normally attended to by attorneys."  Id. (quotation omitted).

We find no error in the trial court's determination that the timeline does not constitute attorney work product.  "[P]urely factual information," such as the dates and events listed in the timeline, "do not fall within the ambit of the [work product] doctrine."  Id.

The plaintiffs also imply that the timeline is a confidential attorney-client privileged communication, and argue that the timeline's admission and resulting cross-examination constituted an "impertinent intrusion in legitimately private matters," and "created undue confusion which far outweighed any probative value."  We decline to address those arguments either because they were not preserved for our review, see Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004), or because they are insufficiently developed to warrant appellate review, see Kilnwood on Kanasatka Condo. Unit Assoc. v. Smith, 163 N.H. 751, 753 (2012).

10

For all of the above reasons, therefore, we affirm the trial court's decision.

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.