Rockingham
No. 2005-304

THE STATE OF NEW HAMPSHIRE

v.

JAMES MURRAY

Argued: May 17, 2006
Opinion Issued: June 27, 2006

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, James Murray, was convicted in Superior Court (*Coffey*, J.) of driving while certified as a habitual offender, *see* RSA 262:23 (Supp. 2000), and driving while intoxicated, *see* RSA 265:82 (2004). He appeals, arguing that his second trial after a mistrial was barred by double jeopardy. We affirm.

The record reflects the following facts. On May 11, 2001, at around 11:00 p.m., the defendant and his girlfriend, Lucy Halle, were driving in Halle's van on Hooksett Road in Auburn. Officer Willie Scurry saw the van stop alongside the road and the defendant exit the driver's side of the van and walk away. Scurry pulled up behind the van, exited the cruiser and asked the defendant what he was doing. The defendant told him that he was looking for a gas station in order to use the bathroom. Scurry asked the defendant for his license and the defendant produced a non-driver's identification card. Observing that the defendant appeared intoxicated,

Scurry called for assistance and another officer arrived at the scene. The officers administered field sobriety tests and concluded that the defendant was intoxicated. They then arrested him and took him to the Auburn police station.

The defendant was charged with one count of driving while certified as a habitual offender and two alternative counts of driving while under the influence of liquor. Prior to trial, the defendant stipulated that on May 11, 2001, he was a certified habitual offender. The only issue at trial was whether the defendant was the operator of the vehicle. In her opening statement, defense counsel argued that Halle was driving the van and that the defendant exited the driver's side door because the passenger side door was inoperable.

Officer Scurry, the only witness at the aborted trial, testified that he saw the defendant driving the van before it pulled over, and that he saw the defendant exit from the driver's side of the van. He testified that he arrested the defendant and brought him to the Auburn police department.

At a bench conference, the prosecutor, who is not counsel for the State on appeal, told the trial court that Scurry would testify that during booking procedures he had asked the defendant if he had been driving and the defendant had answered yes. The defendant objected, arguing that this statement was inadmissible because the State had not given him notice of it, as is required by Superior Court Rule 98. The trial court agreed and ruled that the statement was inadmissible.

Later, during redirect examination, the following exchange took place:

Prosecutor: How long were you on the scene with the defendant?

. . . .

Scurry: From the time I pulled in back of the vehicle?

Prosecutor: Yes.

Scurry: I want to say approximately 15, 20 minutes.

Prosecutor: And during that time, did the defendant tell you that he wasn't driving? Did he make any statements? Well, strike that. Did he make any statement as to whether he was driving, at the scene?

Scurry: Yes.

Prosecutor: He indicated to you one way or the other whether he was driving, at the scene?

Scurry: Yes.

Prosecutor:     And what was that?

Scurry:         Well, when I spoke to him, he was—when I questioned him and I informed him that he has a non-driver's ID, he in turn told me that his girlfriend was tired and that's why he was driving.

At this point, the defendant moved for a mistrial, arguing that the State never notified him of any admission or provided him with notice of the statement. The prosecutor responded, "[Scurry's testimony] was unexpected to me. That's not the direction I was going .... The anticipated answer was not what he gave .... That's the first time that I had heard that." She explained that she "expected that his answer would be no ... and that was the reason that [she] asked it." The prosecutor stated that she had anticipated that Scurry's response would be that the defendant had not made any statement at the scene about who was driving, and that Scurry's anticipated response was "something that [she] was going to use in closing, to [describe] the fact that for this length of time that they were on the scene, that nothing was—that the defendant didn't say anything about whether or not he was driving." The court granted the defendant's motion for a mistrial and ruled that the State's failure to disclose the defendant's statement was "a violation of [the] discovery rules."

The defendant subsequently moved to dismiss all charges. At the motion hearing, he argued that the prosecutor had intentionally provoked the mistrial and, therefore, a retrial would violate the constitutional prohibition against double jeopardy. The prosecutor again argued that, although she had continued to question Scurry about what the defendant said at the scene of the stop, she did not anticipate that Scurry would testify that the defendant had made any statement about driving. She stated that "there was no intention of trying to provoke the defense's request for a mistrial." She explained, "I was personally not aware of any statements that the defendant made to the officer at the scene of the stop and, so ... I couldn't have intentionally asked [Scurry] about statements [the defendant] made."

The trial court ruled that the prosecutor did not intentionally provoke the mistrial and denied the motion to dismiss. The defendant was retried and convicted on the habitual offender charge and one of the charges of driving while intoxicated.

On appeal, the defendant contends that his second trial was barred by double jeopardy under both the Federal and State Constitutions. *See* U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 16. First, he argues that the trial court erred by finding that the prosecutor did not intentionally

provoke the mistrial. Second, he argues that the New Hampshire Constitution provides him more protection than the Federal Constitution such that, even if the prosecutor did not intentionally provoke a mistrial, her conduct amounted to "gross negligence." He contends that under *State v. Zwicker*, 151 N.H. 179, 188 (2004), prosecutorial "gross negligence" that leads to a mistrial bars retrial under principles of double jeopardy. We first address the defendant's claim that the trial court erred by finding that the prosecutor did not intentionally provoke a mistrial. We consider this argument under the State Constitution and cite federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983).

The defendant argues that "principles of double jeopardy bar retrial when, by reason of prosecutorial overreaching that is intended either to provoke the defendant into requesting a mistrial or to prejudice his prospects for an acquittal, the defense successfully moves for a mistrial." He argues that "[h]ere, objective circumstances indicate that the prosecutor intended to prejudice the defense or to provoke the defense into seeking a mistrial."

The State concedes that the prosecutor's actions constituted misconduct. It argues, however, that the prosecutor did not intend to prejudice the defendant's prospects for an acquittal or provoke the defendant into seeking a mistrial and, thus, there were no grounds for barring retrial. We agree.

Where, as here, a mistrial has been declared, "the defendant's valued right to have his trial completed by a particular tribunal is also implicated." *United States v. Dinitz*, 424 U.S. 600, 606 (1976) (quotation omitted), *cert. denied*, 429 U.S. 1104 (1977). "If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by [the] judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial." *Id.* at 607 (quotation omitted).

Specific considerations obtain when a mistrial has been declared at the defendant's request. *See id.* "[W]hen judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution." *Id.* at 608. However, when a defendant requests and obtains a mistrial "by reason of prosecutorial or judicial overreaching that is intended to either provoke the defendant into requesting a mistrial or to prejudice his prospects for an acquittal, . . . the

Double Jeopardy Clause prohibits a retrial." *Zwicker*, 151 N.H. at 188 (quotation omitted).

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . . Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Oregon v. Kennedy*, 456 U.S. 667, 675-76 (1982).

Whether the prosecution intended to provoke a mistrial is a question of fact to be decided by the trial court. *State v. Duhamel*, 128 N.H. 199, 203 (1986). We accept the trial court's factual findings unless they are unsupported by the evidence in the record. *See Dow v. Town of Effingham*, 148 N.H. 121, 124 (2002). Furthermore, we will not overturn the trial court's decision concerning a motion to dismiss after a mistrial absent an unsustainable exercise of discretion. *See Zwicker*, 151 N.H. at 188.

In denying the defendant's motion to dismiss after the first trial, the trial court expressly found:

> There is no question that the prosecutor's conduct at trial was unacceptable. However, the Court had the opportunity to hear the offending questions and the tone and manner in which they were asked. The prosecutors have argued that the questions were not intended to elicit inadmissible evidence and, in fact, the officer's responses were a surprise to them. In addition, the State opposed the motion for a mistrial. After consideration of all of the foregoing, the Court concludes that the misconduct resulted from prosecutorial blundering and not prosecutorial strategy.

The defendant challenges the trial court's findings in two respects. First, he challenges the finding that the prosecutor lacked the intent to provoke a mistrial. Second, he challenges the finding that the State opposed the defendant's motion. With respect to the defendant's second challenge, we note that the prosecutor repeatedly explained and defended her reasons for pursuing the line of questioning and conclude that, while this was not a formal objection, it was sufficient to indicate the prosecutor's opposition to the defendant's motion.

With respect to the trial court's finding that the prosecutor lacked the intent to provoke a mistrial, the defendant points out that "before asking the question which elicited [the defendant's] incriminating statement, the prosecutor had twice heard Scurry say that he did remember a statement made by [the defendant] about who was driving." Thus, he argues, "the prosecutor could no longer credibly claim not to know that Scurry had heard [the defendant] make a statement, nor claim that she merely hoped to elicit support for her inference-of-guilt-from-silence argument." The defendant also argues that "objective circumstances suggest the existence of a tactical reason for the State to provoke a mistrial [because the] State's case was not overwhelming."

The State concedes that the prosecutor's continued questioning of Scurry after Scurry had twice testified that the defendant had made a statement was misconduct. It argues that "the state of the evidence cannot be deemed so unfavorable as to demand a finding that the prosecutor wished to provoke a mistrial." We agree.

The record does not demonstrate that the State had any "tactical reason" to provoke a mistrial, or that the prosecutor's actions were intended to provoke the defendant into seeking a mistrial or prejudice his prospects for an acquittal. The only witness who had testified was Scurry. He had unequivocally identified the defendant as the operator of the van. Cross-examination had exposed no serious weaknesses in his identification. Thus, we cannot say that the trial court erred in finding that the prosecutor's actions were "prosecutorial blundering" and not intentional.

The trial court's finding is consistent with cases in which we upheld findings that the prosecutor lacked the intent to provoke a mistrial or prejudice the defendant's right to an acquittal, and, thus, retrial was not barred. *See, e.g., Zwicker*, 151 N.H. at 188 (holding that prosecutor's question which elicited reference to defendant's inadmissible criminal record was not intended to provoke the defendant into seeking a mistrial and did not bar retrial); *see also State v. Montella*, 135 N.H. 698, 700-01 (1992) (holding that prosecutor's question which caused witness to refer to inadmissible evidence was not asked "for the purpose of precipitating a mistrial" and did not bar retrial); *Duhamel*, 128 N.H. at 202-03 (holding that prosecutor's cross-examination of defendant about whether he had ever previously claimed self-defense was not intended to provoke a mistrial and did not bar retrial).

The Federal Constitution provides no greater protection than does the State Constitution under these circumstances. *Kennedy*, 456 U.S. at 675-

76; *Zwicker*, 151 N.H. at 188. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that although *Kennedy* holds that the Federal Constitution bars retrial only upon a showing of intentional prosecutorial misconduct, the New Hampshire Constitution affords him greater protection. He contends that, under *Zwicker*, retrial is barred in instances where prosecutorial gross negligence leads to a mistrial, and that retrial should have been barred because the prosecutor's conduct amounted to prosecutorial gross negligence.

In *Zwicker*, we stated:

> Generally, when a defendant's request for a mistrial is granted, a retrial on the same charge is not barred by double jeopardy. On the other hand, when, by reason of prosecutorial or judicial overreaching that is intended either to provoke the defendant into requesting a mistrial or to prejudice his prospects for an acquittal, the defendant requests and obtains a mistrial, the Double Jeopardy Clause prohibits a retrial. To establish prosecutorial overreaching, the defendant must show that the government, through gross negligence or intentional misconduct, caused aggravated circumstances to develop that severely prejudiced the defendant. Therefore, a retrial is permitted unless the defendant, by conduct and design of the State, has been painted into a corner leaving a motion for mistrial as the only reasonable means of avoiding becoming a victim of unlawful tactics or inadmissible evidence.

*Zwicker*, 151 N.H. at 188 (citations and quotations omitted). *Zwicker* stands for the proposition that a defendant establishes prosecutorial overreaching by showing either gross negligence or intentional misconduct. *Id.* A defendant may obtain a mistrial by showing prosecutorial gross negligence. *Id.* However, an additional showing, beyond prosecutorial gross negligence, is required to bar retrial. *Cf. id.* To bar retrial, the prosecutorial overreaching must also be "intended either to provoke the defendant into requesting a mistrial or to prejudice his prospects for an acquittal." *Id.*

This standard is consistent with the federal standard. *See Kennedy*, 456 U.S. at 675-76. Thus, we are not persuaded by the defendant's argument that *Zwicker* affords defendants greater double jeopardy protection under the State Constitution than under the Federal Constitution. Accordingly,

we need not address whether the prosecutor's misconduct rose to the level of gross negligence.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.