Hillsborough-northern judicial district
No. 2008-912

THE STATE OF NEW HAMPSHIRE

v.

CHARLES GLENN, JR.

Argued: February 17, 2010
Opinion Issued: July 20, 2010

*Michael A. Delaney*, attorney general (*Karen E. Huntress*, assistant attorney general, on the brief, and *Peter Hinckley*, assistant attorney general, orally), for the State.

*Kenna & Sharkey, P.A.*, of Manchester, and *Bookman & Al-Marayati* of Melrose, Massachusetts (*Bruce E. Kenna* on the brief, and *Ghazi D. Al-Marayati* orally), for the defendant.

HICKS, J. In this interlocutory appeal, *see* SUP. CT. R. 8, the defendant, Charles Glenn, Jr., challenges the rulings of the Superior Court (*Barry*, J.) denying his: (1) motion to dismiss all pending indictments on the basis of double jeopardy; (2) motion to dismiss based upon prosecutorial misconduct; and (3) motion *in limine* to exclude evidence of robbery. We affirm and remand.

The following facts are taken from the interlocutory appeal statement and the trial court's orders, or are undisputed. On January 20, 2006, a

grand jury indicted the defendant on alternative counts of first degree murder, *see* RSA 630:1-a (2007), and second degree murder, *see* RSA 630:1-b (2007). The first degree murder indictment alleged that the defendant "did knowingly cause the death of Leonard Gosselin before, after, while engaged in the commission of, or while attempting to commit robbery while armed with a deadly weapon, to wit, a gun, by shooting Leonard Gosselin in the back with that deadly weapon." The second degree murder indictment alleged that the defendant "did recklessly cause the death of Leonard Gosselin under circumstances manifesting an extreme indifference to the value of human life by shooting him in the back with a gun." Both indictments had been obtained based, in part, upon the perjured grand jury testimony of a critical eyewitness, Joseph Salvatore.

At trial, the State's proof that the defendant shot and killed Gosselin depended heavily upon the testimony of Salvatore. The trial court found that during the investigation, "Salvatore repeatedly lied to the State." Immediately after the shooting, Salvatore told police that he came upon an argument between the victim and an unknown black male, and watched the black male grab the victim's gold chain and shoot him. Five days later, on September 4, 2005, he admitted that he and the victim had driven together to a housing complex to conduct a pre-arranged drug purchase. He informed police that when they arrived at the complex, the victim climbed out of the vehicle and a black male meeting the defendant's description approached and then shot him. In January 2006, Salvatore testified before the grand jury, providing a similar account to the one he gave on September 4, 2005.

On July 10, 2006, before the start of trial but after jury selection, Salvatore spoke with the police again and provided a different version of the shooting. Most notably, he stated that the shooting occurred inside his car and that the victim may have reached for a gun before being shot. He also stated that he purchased a 9-mm handgun and applied for a permit to carry the handgun as a concealed weapon after the shooting.

The State informed the defendant and the trial court of Salvatore's new version of events and moved for a continuance of the trial in order to re-indict the defendant based upon Salvatore's newest account of the circumstances surrounding the shooting. Concurrently, the defendant moved to dismiss the indictments, arguing that Salvatore perjured himself before the grand jury, and that this perjury produced the indictments against him. Alternatively, the defendant argued that the State should be precluded from presenting Salvatore's testimony. The trial court denied both parties' motions and a jury trial was held from July 11-31, 2006.

At trial, Salvatore testified consistently with the statement he gave on July 10, 2006. The defendant's trial theory was that Salvatore shot the

victim. During cross-examination, defense counsel questioned Salvatore about the different versions of the circumstances surrounding the shooting, his police statements, and his perjured grand jury testimony. Defense counsel elicited from Salvatore that he purchased his gun after the shooting and applied for a permit to carry a concealed weapon because he feared for his life. Salvatore also stated that he did not own a gun prior to the shooting.

At the close of trial, the court instructed the jury to first consider the indicted charges of first degree murder and reckless second degree murder, and to then consider the lesser-included offenses of knowing second degree murder and manslaughter. The defendant assented to these lesser-included instructions. After five days of deliberations, the jury acquitted the defendant of first degree murder, but deadlocked on the reckless second degree murder charge. The defendant moved for a mistrial, which the court granted.

Subsequently, the defendant requested a copy of Salvatore's concealed handgun permit application, which the State then produced. The application indicated that Salvatore applied for the permit on August 5, 2005, three-and-a-half weeks before the victim's death. The defendant contends that Salvatore lied at trial when he said that he did not apply for a permit until after the shooting.

On October 23, 2006, the grand jury returned an indictment on two alternative charges of second degree murder. The first alleged reckless second degree murder, identical to the charge upon which the first jury deadlocked. The second indictment alleged knowing second degree murder; specifically, that the defendant "did commit the crime of Second Degree Murder (RSA 630:1-b) in that [he] did knowingly cause the death of Leonard Gosselin by shooting Leonard Gosselin in the back with a gun." Subsequently, the defendant filed: (1) a motion to dismiss all pending indictments because the indictments alleged the same offense of which the jury acquitted him during the prior trial; (2) a motion to dismiss based on prosecutorial misconduct; and (3) a motion *in limine* to exclude evidence of robbery. The trial court denied all three motions and the defendant filed this interlocutory appeal.

## I. Double Jeopardy

On appeal, the defendant first argues that the Double Jeopardy Clauses of the United States and the New Hampshire Constitutions, *see* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16, prohibit his retrial because he was tried and acquitted of first degree murder in July 2006. He contends that the alternative indictments for reckless second degree murder and

knowing second degree murder constitute the same offense of which the jury acquitted him during the prior trial. Because the defendant's argument presents a question of constitutional law, our review is *de novo. State v. Flood,* 159 N.H. 353, 355 (2009). We first address the defendant's claim under the New Hampshire Constitution, *State v. Ball,* 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33.

 Part I, Article 16 of the New Hampshire Constitution protects against "successive prosecutions for the same offense after acquittal or after conviction, and against multiple punishments for the same offense." *Petition of State of N.H. (State v. Johanson),* 156 N.H. 148, 156 (2007) (quotation omitted). "Two offenses will be considered the same for double jeopardy purposes unless each requires proof of an element that the other does not." *State v. McGurk,* 157 N.H. 765, 773 (2008) (quotation and brackets omitted). When applying this double jeopardy test, our focus is upon "whether proof of the elements of the crimes *as charged* will in actuality require a difference in evidence." *State v. Hannon,* 151 N.H. 708, 713 (2005) (quotation omitted). We analyze and compare "the statutory elements of the charged offenses in light of the actual allegations contained in the indictments." *Id.* (quotation omitted).

 We first address whether the defendant can be retried for reckless second degree murder after being acquitted of first degree felony murder, focusing upon the elements of each offense charged. *See State v. Nickles,* 144 N.H. 673, 677-78 (2000) (noting that "when a mistrial is granted on one charge due to jury deadlock, an acquittal on the other does not, in itself, bar retrial for the deadlocked charge because jury deadlock prevents original jeopardy from terminating on that charge"). Here, the second degree reckless murder indictment as charged requires proof of a different *mens rea* from that of the first degree felony murder indictment. To convict the defendant of the second degree reckless murder charge, the State has to prove that he "recklessly cause[d] the death of Leonard Gosselin under circumstances manifesting an extreme indifference to the value of human life." In comparison, to obtain a conviction on the first degree murder indictment, the State had to establish that the defendant "knowingly cause[d] the death of Leonard Gosselin." A person acts knowingly when "he is aware that it is practically certain that his conduct will cause a prohibited result." *State v. Bergen,* 141 N.H. 61, 63 (1996) (quotation omitted).

Additionally, to convict the defendant of first degree felony murder, the State had to prove that the defendant caused the death of Gosselin "before, after, while engaged in the commission of, or while attempting to commit

robbery while armed with a deadly weapon." The reckless second degree murder charge did not include this element. Accordingly, the two charges required different evidence.

■ Next, we address whether the defendant's retrial on the knowing second degree murder indictment violates the double jeopardy doctrine. The fact that knowing second degree murder is a lesser-included charge of first degree felony murder is not dispositive. Most courts find that a defendant may be retried for a lesser-included offense, despite being acquitted of the greater offense, if: (1) the jury was instructed on the lesser-included offense; and (2) the jury deadlocked or failed to address the lesser-included offense. *See, e.g., United States v. Gooday*, 714 F.2d 80, 83 (9th Cir. 1983), *cert. denied*, 468 U.S. 1217 (1984); *Griffin v. State*, 717 N.E.2d 73, 82 (Ind. 1999), *cert. denied*, 530 U.S. 1247 (2000); *State v. Grabowski*, 644 A.2d 1282, 1286 (R.I. 1994). An instruction on a lesser-included offense effectively operates as a separate count in the indictment. *Gooday*, 714 F.2d at 82 (if no instructions are given on lesser included offense, "an acquittal on the crime explicitly charged necessarily implies an acquittal on all lesser offenses included within that charge"); *see Andrade v. Superior Court*, 901 P.2d 461, 464 (Ariz. Ct. App. 1995).

For example, in *Gooday*, the Ninth Circuit Court of Appeals held that the defendant's acquittal for first degree murder did not preclude his retrial on second degree murder, voluntary manslaughter or involuntary manslaughter because the trial court had instructed the jury on these lesser included offenses at the defendant's request but the jury simply did not reach a verdict on them. *Gooday*, 714 F.2d at 82-83; *see Grabowski*, 644 A.2d at 1286 (rejecting defendant's argument that his acquittal on a charge of first degree murder barred his retrial for the lesser included offenses of second degree murder and manslaughter upon which the jury deadlocked).

■ Similarly, here, in the first trial, the court instructed the jury on the lesser included offense of knowing second degree murder that was not specified in the original indictment. The jury acquitted the defendant of the first degree murder charge but made no finding on the lesser included offense. We hold that the defendant's acquittal on the first degree felony murder charge does not bar retrial on the lesser included offense of knowing second degree murder because jeopardy on the latter charge has not terminated. *See Gooday*, 714 F.2d at 83; *Grabowski*, 644 A.2d at 1286.

The defendant further contends that *Yeager v. United States*, 129 S. Ct. 2360 (2009), requires the dismissal of the second degree reckless murder and second degree knowing murder indictments against him under the Double Jeopardy Clause. In *Yeager*, the defendant was tried on a variety of offenses related to his employment as an officer of Enron Broadband

Services, including insider trading and fraud. *Yeager*, 129 S. Ct. at 2363-64. At trial, the jury acquitted the defendant of the fraud counts but hung on the insider-trading counts. *Id.* at 2364. After a mistrial was declared as to the insider-trading counts, the government obtained a new indictment for some of the insider trading counts on which the jury had hung. *Id.* The defendant claimed these indictments violated the Double Jeopardy Clause.

◼ Extending its holding in *Ashe v. Swenson*, 397 U.S. 436 (1970), the Supreme Court held that "the Double Jeopardy Clause precludes the government from relitigating an issue that was necessarily decided by an acquittal in a prior trial" even if the acquittal and the failure to reach a verdict occurred during the same trial. *Yeager*, 129 S. Ct. at 2366-67. The Supreme Court directed that "to decipher what a jury has necessarily decided," courts should "examine the record of a prior proceeding taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other that that which the defendant seeks to foreclose from consideration." *Id.* at 2367 (quotations omitted). A hung jury count should not be considered in this determination. *Id.* at 2367-68.

◼ Here, the defendant argues that the jury, by acquitting him of first-degree felony murder, necessarily found that he did not shoot and kill the victim, and, therefore, his reprosecution is barred by the Double Jeopardy Clause. The defendant asserts that this was the sole issue contested at the original trial. We disagree. The first degree felony murder indictment alleged that the defendant "did knowingly cause the death of Leonard Gosselin before, after, while engaged in the commission of, or while attempting to commit robbery while armed with a deadly weapon, to wit, a gun by shooting [the victim] in the back with that deadly weapon." Based on our review of the record, evidence, charge, and other relevant matters, we believe that the jury could have based its acquittal for the first degree felony murder on other grounds, such as the defendant did not attempt to rob the victim at the time of the shooting. Indeed, the record reveals that the defendant contested all elements of the crime throughout his trial. In his closing argument, the defendant denied that he was involved in a robbery at the time of the victim's shooting, asserting, "The accusation . . . is that he went up to a guy in a parking lot, grabbed for his chain and shot him and ran away. And that is a lie. . . . And that lie did crumble, didn't it." Therefore, we hold that *Yeager* does not bar the defendant's retrial for second degree knowing or reckless murder, neither of which requires proof of robbery for conviction.

The State Constitution provides at least as much protection as the Federal Constitution under these circumstances. *See United States v.*

*Dixon,* 509 U.S. 688, 696-704 (1993) (overruling "same conduct" test and retaining "same elements" test in federal double jeopardy); *Gooday,* 714 F.2d at 82-83. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

## II. Prosecutorial Misconduct

The defendant next contends that the Double Jeopardy and Due Process Clauses of the State and Federal Constitutions prohibit his retrial because the State intentionally engaged in prosecutorial misconduct. Specifically, he alleges that the State proceeded to trial on tainted indictments, permitted its only eyewitness to commit perjury at trial, and failed to disclose material exculpatory evidence. Had the State not engaged in this misconduct, the defendant asserts, "full acquittal was a sound possibility," and, therefore, "[a]ny future trial . . . should be barred." The State counters that it did not engage in any misconduct during the first trial, and that even if there were misconduct, dismissal with prejudice is neither warranted nor required.

■ We first address the defendant's arguments under the Double Jeopardy Clause of the New Hampshire Constitution. "Double jeopardy will bar retrial . . . where a prosecutor engages in misconduct with the intention of provoking the defendant into moving for a mistrial and the defendant does so." *State v. Marti,* 147 N.H. 168, 170 (2001); *see Oregon v. Kennedy,* 456 U.S. 667, 679 (1982). Double jeopardy also bars retrial where "the misconduct of the prosecutor is undertaken . . . to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Marti,* 147 N.H. at 171 (quotation omitted).

Under either exception, the State must have engaged in misconduct. *State v. Murray,* 153 N.H. 674, 681 (2006); *see United States v. Cartagena-Carrasquillo,* 70 F.3d 706, 714-15 (1st Cir. 1995). The State also must intend "to subvert the protections afforded by the Double Jeopardy Clause." *Marti,* 147 N.H. at 172 (quotation omitted); *see State v. Zwicker,* 151 N.H. 179, 188 (2004) (holding that prosecutor's question which elicited reference to defendant's inadmissible criminal record was not intended to provoke the defendant into seeking a mistrial and did not bar retrial). This "deliberate intent" standard is consistent with the federal standard. *See Murray,* 153 N.H. at 681 (stating that "an additional showing, beyond prosecutorial gross negligence, is required to bar retrial"); *see also Kennedy,* 456 U.S. at 675-76.

■ Whether the State engaged in misconduct or had the intent to undermine the protections of the Double Jeopardy Clause is a question of fact for the trial court to determine. *Murray,* 153 N.H. at 679; *Zwicker,* 151 N.H. at 187-88. We will uphold the trial court's factual findings provided

that the evidence supports them and they are not unlawful. *Murray*, 153 N.H. at 679. Here, the trial court "d[id] not find any misconduct on the part of the State, let alone misconduct undertaken to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." (Quotation omitted.) Because there is evidence in the record to support this finding, we uphold it.

■■■ The defendant argues that the State first engaged in misconduct when it went to trial on two indictments that were tainted by the perjured grand jury testimony of Salvatore, the only eyewitness to the crime. We agree with the trial court that this was not misconduct because: (1) the State immediately informed the trial court and the defendant about Salvatore's untruthfulness; (2) the State moved for a continuance to re-indict the defendant and, thereby, purge the taint of the perjury from the two indictments, *see United States v. Soto-Beniquez*, 356 F.3d 1, 24 (1st Cir. 2003), *cert. denied*, 541 U.S. 1074 (2004); and (3) the State provided the defendant with all of Salvatore's prior statements, which permitted the defendant to impeach Salvatore on cross-examination.

■■■ The defendant also contends that the State engaged in misconduct when it called Salvatore to testify at trial; the defendant asserts that Salvatore committed perjury on cross-examination. As the trial court aptly noted, there is no evidence that the State intentionally sought Salvatore's false testimony. When the State does not intentionally present false testimony, courts have determined that there are no double jeopardy concerns. *See United States v. Gary*, 74 F.3d 304, 314 (1st Cir.), *cert. denied*, 518 U.S. 1026 (1996); *United States v. Wallach*, 979 F.2d 912, 916 (2d Cir. 1992) (holding that prosecutorial misconduct bars retrial after conviction overturned for perjury only where prosecutor acted intentionally or at least with willful disregard to elicit false statements), *cert. denied*, 508 U.S. 939 (1993).

■■■ The last incident of misconduct allegedly occurred when the State intentionally withheld material exculpatory evidence; namely, Salvatore's application to carry a concealed handgun. Salvatore applied for a concealed handgun permit on August 5, 2005, one month before the victim's murder, and subsequently lied about it. Nevertheless, the trial court credited the State's assertion that it did not know that Salvatore had applied for a concealed handgun permit until the day before trial and that it did not know the contents of that application until after the trial. This credibility determination was for the trial court to make. *See State v. Gordon*, 141 N.H.

703, 705-06 (1997). Because there is evidence in the record to support the trial court's finding that the State did not intentionally engage in misconduct, we uphold it.

For similar reasons, we reject the defendant's due process claim. To prevail upon this claim, the defendant must produce "evidence of irregularity or flagrant misconduct on the part of the prosecutor that deceived the grand jury or significantly impaired its ability to exercise independent judgment." *State v. Dayutis*, 127 N.H. 101, 104 (1985) (quotation omitted). Just as the record supports a finding that the prosecutor did not intentionally engage in misconduct, it also supports a finding that the prosecutor did not engage in any flagrant misconduct. *See Sechrest v. Ignacio*, 549 F.3d 789, 810-11 (9th Cir. 2008), *cert. denied*, 130 S. Ct. 243 (2009).

Because the Federal Constitution affords no greater protection than does the State Constitution in these two contexts, *see Wallach*, 979 F.2d at 916; *Murray*, 153 N.H. at 679; *Dayutis*, 127 N.H. at 104, we necessarily reach the same result under the Federal Constitution.

*III. Evidence of Robbery*

Finally, the defendant asserts that the doctrine of collateral estoppel or issue preclusion bars the State "from producing evidence or argument intended to allege that the [d]efendant was attempting to rob [the victim] at the time of his death." The Double Jeopardy Clauses of the State and Federal Constitutions encompass the doctrine of collateral estoppel. *State v. Fielders*, 124 N.H. 310, 312 (1983); *see also* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16. Because the defendant's argument presents a question of constitutional law, we review it *de novo. See Flood*, 159 N.H. at 355. We first address the defendant's state constitutional argument, citing federal law only as an aid to our analysis. *See Ball*, 124 N.H. at 231-33.

"[C]ollateral estoppel mandates that an issue of ultimate fact that has been fully tried and determined cannot again be litigated between the parties in a future prosecution." *State v. Hutchins*, 144 N.H. 669, 671 (2000); *see Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Collateral estoppel, however, does not operate as a *per se* bar against the admission in a second trial of evidence used in an earlier trial that resulted in an acquittal. *Dowling v. United States*, 493 U.S. 342, 345-46 (1990).

To determine what issues of ultimate fact the jury "necessarily determined," we "examine the record of the prior proceeding . . . and conclude whether a rational finder of fact could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Hutchins*, 144 N.H. at 671 (quotations omitted); *see Ashe*,

397 U.S. at 444. We have stated that our review of the record must take into account "the pleadings, evidence, charge and other relevant matter[s]." *Hutchins*, 144 N.H. at 671. We have never stated whether this review includes a jury's deadlock on a charge; the defendant urged below, as well as here, that it did. The trial court honored this request.

In *Yeager v. United States*, however, the United States Supreme Court held that "the consideration of hung counts has no place in the issue-preclusion [or collateral estoppel] analysis," determining that hung counts are "nonevent[s]" for purposes of this analysis. *Yeager v. United States*, 129 S. Ct. 2360, 2367-68 (2009). The Court reasoned that "[b]ecause a jury speaks only through its verdict, its failure to reach a verdict cannot — by negative implication — yield a piece of information that helps put together the trial puzzle." *Id.* at 2367. We agree. Therefore, the trial court should not have considered the jury's deadlock in its collateral estoppel determination.

Here, we will assume without deciding that the trial court erred in finding that the jury in the first trial did not "necessarily determine" as an issue of ultimate fact that the "[d]efendant was not engaged in a robbery at the time [the victim] was shot." Regardless of the trial court's ruling on this issue, reversal is not necessary. "Where the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." *State v. Wamala*, 158 N.H. 583, 591-92 (2009) (quotation omitted).

The rule of collateral estoppel does "not forbid the relitigation of an issue as one of evidentiary fact, even [if] the State ha[s] lost on the same issue as one of ultimate fact to be proven beyond a reasonable doubt in a prior trial." *State v. Sefton*, 125 N.H. 533, 535-36 (1984). "An ultimate fact that must be proven beyond a reasonable doubt under one criminal charge is to be distinguished . . . from a merely evidentiary fact that is relevant but not required to be proven under a different criminal charge." *Id.* at 535. We applied this rule in *Sefton*, where we held that the State did not violate the doctrine of collateral estoppel when it introduced evidence of a defendant's intoxication at a trial for conduct after an accident even though a jury previously had found the defendant not guilty of driving while intoxicated on a related charge. *Id.* at 536. The State properly used the evidence of the defendant's intoxication to show the defendant's motive for leaving the scene of the accident without reporting it. *Id.*

Here, neither the knowing nor reckless second degree murder indictments as charged require the State to prove beyond a reasonable doubt that the defendant was attempting to rob the victim at the time of the

murder. They require proof that the defendant "knowingly cause[d] the death of [the victim]" or "recklessly cause[d] the death of [the victim] under circumstances manifesting an extreme indifference to the value of human life" "by shooting [the victim] in the back with a gun" respectively. Therefore, under these indictments, the alleged attempted robbery is merely an evidentiary fact; it is not an ultimate fact that must be proved beyond a reasonable doubt. *See Sefton*, 125 N.H. at 535-36; *Fielders*, 124 N.H. at 313.

Accordingly, we hold that the trial court did not err in denying the defendant's motion *in limine* to exclude evidence or argument that the "[d]efendant was attempting to rob [the victim] at the time of his death." Because the Federal Constitution affords the defendant no greater protection, we need not undertake a separate federal analysis. *United States v. Brackett*, 113 F.3d 1396, 1399-1400 (5th Cir.), *cert. denied*, 522 U.S. 934 (1997); *Sefton*, 125 N.H. at 535-36.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.